[No. 12939-2-I.   Division One.   October 14, 1985.]

JOAN M. HERMAN, as *Personal Representative, Respondent,* v. LEONARD M. HERMAN, *Defendant,* KELLER, ROHRBACK, WALDO & HISCOCK, *Respondent,* BERT THOMPSON, *Appellant.*

*Bert Thompson,* pro se.

*Rigby & Jones, Bradley B. Jones,* and *Marlin Vortman,* for respondents.

CORBETT, C.J.—Bert Thompson appeals a summary judgment granting foreclosure of a real estate mortgage in favor of the personal representative of the estate of Tom Niclos. We affirm.

On September 30, 1978, Leonard M. Herman executed a $45,000 note in favor of Tom Niclos and Mary H. Niclos, his grandparents. The note was payable at the rate of $300 or more per month with 6 percent interest and was secured by a mortgage upon real property.

On December 21, 1979, Herman executed a $90,000 promissory note in favor of Thompson. This note was secured by a second mortgage upon substantially the same property as mortgaged to Tom and Mary Niclos.

On December 22, 1981, Tom Niclos commenced this action. Mary Niclos was deceased at that time. The complaint alleged that Herman made no installment payments on the 1978 note after April 1980. Pursuant to the terms of the note and mortgage, Niclos elected to accelerate and

prayed for foreclosure. Upon the death of Niclos in 1982, the personal representative of his estate, Joan M. Herman, was substituted as a party to the action.

Thompson answered and counterclaimed to foreclose his mortgage as a first lien. He asserted that the Niclos note had been satisfied and was not in default. Thompson sought summary judgment on the pleadings. The representative filed a cross motion for summary judgment. Thompson assigns error to the denial of his motion and the granting of the representative's motion.

The note provided in pertinent part:

[T]hat such payments shall continue only so long as either Tom Niclos or Mary H. Niclos are alive and that upon the death of the second to die, then no further payments shall be made, then this note shall be deemed fully paid and the real estate mortgage securing this note shall be deemed satisfied. This note is made, executed and to be construed as under the laws of the State of Washington, and is secured by a mortgage on real estate.

Thompson argues that life expectancy of Tom Niclos at the time the note was executed was approximately 5.3 years. The payment schedule would permit a maximum of 23 years to discharge the note in full. He contends, therefore, that it was the intent of Niclos upon his death to give the property to Herman.

After some 19 months, during which Herman failed to pay on the note, Niclos ousted Herman from the premises and accelerated the note. Herman's default in payment breached his obligation under the note, relieving Niclos of his obligation to forgive the debt upon his death. Upon acceleration, the entire note became due, and the condition subsequent of forgiveness by death of the payee was excused or discharged.

An agreement which is made in connection with a contemporaneously incurred indebtedness and which provides that the debt remaining at the creditor's death shall be extinguished is enforceable as a contract. *In re Estate of Lewis,* 2 Wn.2d 458, 462, 98 P.2d 654, 127 A.L.R. 628

(1940); *Compton v. Westerman,* 150 Wash. 391, 393–96, 273 P. 524 (1928); *In re Estate of Verbeek,* 2 Wn. App. 144, 153–54, 467 P.2d 178 (1970). It is not a gift, either inter vivos or causa mortis. *See Compton,* at 393–96. As with a contract, the material failure of performance by the debtor, not justified by the conduct of the creditor, discharges the latter's duty to give the agreed exchange. *Lynch v. Higley,* 8 Wn. App. 903, 919, 510 P.2d 663 (1973); Restatement of Contracts §§ 274, 397 (1932). Therefore, we find persuasive, as did the trial court, the reasoning in *Yost v. Robbins,* 32 Luzerne Legal Reg. Rep. 276 (C.P. Pa. 1938) (see summary in 11 A.L.R.3d 1427, 1452 (1967)). Robbins, the debtor in that case, was in default on his payments of principal and interest to Yost, the creditor, when Yost died. The court, citing Restatement of Contracts § 397 (1932),[1] decided that upon Yost's death Robbins could not benefit from the provision of debt forgiveness. Similarly, in this case since Herman was in default at the time of acceleration, he is not entitled to further benefit from the note. The trial court did not err by granting summary judgment to the representative.

Thompson, as redemptioner, further assigns error to the award of $2,500 as attorney's fees granted to the representative in the summary judgment. An award of attorney's fees will not be overturned absent a showing of abuse of discretion by the trial court. *Granite Equip. Leasing Corp. v. Hutton,* 84 Wn.2d 320, 327–28, 525 P.2d 223, 72 A.L.R.3d 1172 (1974); *Structurals Northwest, Ltd. v. Fifth & Park Place, Inc.,* 33 Wn. App. 710, 718, 658 P.2d 679 (1983). Abuse of discretion is discretion that is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Thompson fails to show any abuse of discretion by the trial court. The record clearly shows

---

[1]"A breach or non–performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." Restatement of Contracts § 397 (1932).

that the note provided for attorney's fees on default. The court considered all of the affidavits submitted by the representative's attorney for attorney's fees and awarded only half of the amount requested. The award was not made in error.

Thompson also assigns error to the award of $2,244.12 for expenses to preserve and protect the property. The court found that the representative collected $1,725 in rents, that she expended $1,628 for repairs, and that delinquent property taxes in the amount of $2,341.12 had to be promptly paid. The court credited the representative for $2,244.12, "representing the difference between expenses to preserve and protect the property and rents received therefrom".

Thompson argues that the present case is analogous to the situation covered by RCW 6.24.190, which provides for an accounting, and an allowance for the purchaser to offset the "expenses paid for operating, caring for, protecting and insuring the property", against the rents or profits received therefrom *during the redemption period.* Thompson relies on *W.T. Watts, Inc. v. Sherrer,* 89 Wn.2d 245, 250–51, 571 P.2d 203 (1977), which essentially holds that RCW 6.24.190 precludes subjecting a redemptioner's interest to a lien for expenses incurred for repairs or improvements without the redemptioner's authorization, when the expenses incurred are over and above the amount of the rents. Neither the case nor the statute applies to the peculiar circumstances here. The redemption period had not started yet. Herman had abandoned the property to Niclos who became a mortgagee in possession.

A mortgagee in possession is also required to account for the rents and profits he receives from the premises, 55 Am. Jur. 2d *Mortgages* § 224 (1971). He or she is entitled to an allowance for sums disbursed to make repairs, provided the repairs are shown to have been reasonable and necessary. 55 Am. Jur. 2d *Mortgages* § 233 (1971). The representative presented an affidavit to the trial court accounting for the rents and for expenses incurred for "basic repairs . . . which were required to

make the premises habitable."

Upon accounting for rents and profits, a mortgagee in possession is also entitled to credit for any sum expended by him or her for taxes upon the mortgaged premises. 55 Am. Jur. 2d *Mortgages* § 236 (1971); *see National Bank v. Equity Investors,* 86 Wn.2d 545, 558, 546 P.2d 440 (1976). Therefore, to the extent that these taxes were paid by Niclos or the representative, they should be credited to the representative as part of the judgment of foreclosure.

The difference between the rents with which the representative is charged and her credits may be added to the mortgage debt. *See* 55 Am. Jur. 2d *Mortgages* § 224 (1971). The court did not err by adding $2,244.12 to the judgment for the representative.

In his brief Thompson attempts to raise issues of fact he variously refers to as collusion, waiver, gift, and estoppel, but he provided no affidavits to the trial court on any factual issues. Therefore, we have nothing more than argumentative assertions wholly unsupported by the record. These arguments were not presented to the trial court, and we will not now consider them upon appeal. In summary judgment proceedings, this court may only review "the precise record—no more and no less—considered by the trial court." *American Universal Ins. Co. v. Ranson,* 59 Wn.2d 811, 816, 370 P.2d 867 (1962); *Grange Ins. Ass'n v. Ochoa,* 39 Wn. App. 90, 93, 691 P.2d 248 (1984).

Affirmed.

WILLIAMS and COLEMAN, JJ., concur.