[No. 13906-1-I. Division One. January 15, 1986.]

DANIEL SCOTT SCULLY, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

*David James Roberge,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Mary Ellen Combo, Assistant,* for respondent.

RINGOLD, J.—Daniel Scully appeals the Superior Court's affirmance of the Department of Employment Security's

determination that his appeal was untimely filed. We reverse and remand.

Scully was employed as a parking lot cleaner from September 14, 1982, until he voluntarily quit on December 22, 1982, apparently for health reasons. The following week, on December 28, 1982, he submitted a claim for unemployment compensation benefits.

Scully had a prior history of claims with the Department of Employment Security. The Department's records indicated that Scully's address was 12216 – 171st Place S.E., Renton, WA 98056, although Scully testified he moved from that address in September 1982. When he reopened his claim for unemployment benefits in December, he failed to notify the Department of his address change. The Department was not made aware of Scully's new address in Edmonds until January 18, 1983.

On January 11, 1983, the Department mailed a determination notice to Scully's old address in Renton. Scully's brother, Mike, still lived at that address and received the notice. On January 14, 1983, Scully met his brother at Southcenter. Scully was leaving Seattle that day for Arizona, to assist his parents' relocation. During their meeting, Mike gave him two envelopes from the Department. One contained a determination notice stating that his application for benefits was denied and that the notice was final unless an appeal was filed on or before January 21, 1983. The other envelope contained a benefit check for $150 from the Department. Scully stated that although he was confused by the notice denying benefits he decided it was a mistake since the Department was sending him his benefit check. Scully then left for Arizona.

He returned to Seattle on January 24. On the 26th, he picked up a letter at his brother's house from the Department. This letter was a redetermination notice stating he was entitled to $2,400 minus the $150 previously paid, for a balance of $2,250. It also stated that "[t]his redetermination is final unless an appeal is filed in writing within 10 days from January 18, 1983."

On February 5, Mike delivered to Scully a request for
waiver notice. Although the request for waiver was mailed
January 14, 1983, it was apparently misplaced until it was
received by Scully on February 5. This notice stated that
the Department records indicated a potential overpayment
to Scully on his unemployment compensation claim due to
payment of benefits during a period of disqualification.
Scully then realized that the $150 payment may have been
in error. He reported to the Department office on the next
working day, February 7, to file an appeal.

A de novo hearing was held on February 28, 1983, before
Richard A. Knutson, an administrative law judge (ALJ)
employed by the State Office of Administrative Hearings.
After hearing testimony on the issue of untimeliness and
the merits of the claim, the judge dismissed Scully's appeal
because it was untimely filed without good cause. Scully
appealed this decision to the Commissioner of the Depart-
ment. The Commissioner affirmed the ALJ's decision.

The decision was subsequently affirmed by the Superior
Court and this appeal followed.

<h3 style="text-align:center">UNTIMELINESS OF APPEAL</h3>

Scully argues that the Department misled him by send-
ing him his first benefit check along with a determination
notice stating he was ineligible for benefits. Receipt of these
contradictory messages led to the untimely filing of his
appeal and constitute "good cause" for waiving the time
limit.

■■ Administrative proceedings of the Department
are reviewed by the courts under the provisions of the
administrative procedure act, RCW 34.04. *Rasmussen v.
Department of Empl. Sec.*, 98 Wn.2d 846, 849, 658 P.2d
1240 (1983). RCW 34.04.130(6) sets the standards of review.
It states:

> The court may affirm the decision of the agency or
> remand the case for further proceedings; or it may
> reverse the decision if the substantial rights of the peti-
> tioners may have been prejudiced because the adminis-
> trative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
(f) arbitrary or capricious.

The determination of which standard to apply is based upon whether the question presented for review is one of fact, law, or a mixed question of law and fact. *Rasmussen,* at 849. The question of whether good cause exists to excuse an untimely appeal is a mixed question of law and fact. *Rasmussen,* at 850; *Devine v. Department of Empl. Sec.,* 26 Wn. App. 778, 781, 614 P.2d 231 (1980).

> In an appeal of an administrative decision involving a mixed question of law and fact, the court does not try the facts de novo but it determines the law independently of the agency's decision and applies it to facts as found by the agency.

*Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 441, 680 P.2d 40 (1984). Under this standard, we must accept the agency's findings of fact unless they are clearly erroneous. *Hitchcock v. Department of Retirement Sys.,* 39 Wn. App. 67, 71, 692 P.2d 834 (1984).

The facts before us are essentially undisputed by the parties.[1] In his order of dismissal, the ALJ merely stated that Scully's explanation for filing a late appeal was that the notice of determination

> was mailed to his old address. He didn't pick it up until January 28, 1983.[2] He also received a Monetary Redetermination which he alleged had made him think he was eligible until he received his overpayment "Request for

---

[1] No findings of fact have been provided to this court.

[2] Upon the basis of testimony taken in the Superior Court on appeal, the record was corrected to indicate that Scully received the notice of determination on January 14, 1983, rather than January 28, 1983. Neither party contests this correction.

Waiver" form on or about February 4, 1983. However, the Monetary Redetermination was mailed January 18, 1983, and the Request for Waiver form was mailed January 14, 1983.

The ALJ found no "good cause" for waiving the time limit and appears to have based his order of dismissal strictly upon the dates of mailing of the notices. He failed to make findings on the issue of the receipt of contradictory information from the Department. Since the facts are not in dispute, we will apply them to the case law of Washington.

The governing statute, RCW 50.32.020, provides that in order to perfect an appeal:

> The applicant . . . may file an appeal from any determination or redetermination with the appeal tribunal within ten days after the date of notification or mailing, whichever is earlier, of such determination or redetermination to his last known address: . . .

 To ameliorate the harshness of this rule, the Legislature has vested the Commissioner with authority to waive this time limitation under certain circumstances. RCW 50.32.075 provides that: "For good cause shown the appeal tribunal or the commissioner may waive the time limitations for administrative appeals or petitions set forth in the provisions of this title." Washington courts have applied a 3-pronged test to determine if good cause is established: (1) the shortness of the delay; (2) the absence of prejudice to the parties; and (3) the excusability of the error. *Rasmussen,* at 850; *Devine,* at 782.

Considering the issue of prejudice first, the Department contends that it will be prejudiced by allowing Scully to file his appeal after the deadline. The Department argues that

> both the department and the general public have an interest in, and reasonable expectation of, the department utilizing its limited resources to the processing of fresh claims . . . These important interests would be prejudiced if departmental resources were required to be diverted to re-opening and re-considering petitioner's claim already closed.

This argument is specious. At the same time the ALJ heard testimony on the issue of untimeliness of the appeal, he also heard evidence in regard to the merits of the case. Any prejudice resulting to the Department in this regard is of its own doing.

The Department attempts to analogize to the rules of civil and appellate procedure. It states that the Department's interest in preserving finality, which is analogous to the res judicata effect, would be prejudiced by waiving the time limitations. The short answer to this contention is that the civil and appellate rules do not apply to administrative proceedings. *Rasmussen v. Department of Empl. Sec.*, 30 Wn. App. 671, 674, 638 P.2d 100 (1981), *aff'd*, 98 Wn.2d 846, 658 P.2d 1240 (1983).

The prejudice to Scully if he is not permitted to file a late appeal, on the other hand, is great. In the preamble to the Employment Security Act, the Legislature stated that "this title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." RCW 50.01.010. The Legislature takes for granted that those who are entitled to unemployment are suffering. If Scully is entitled to unemployment compensation, denial of these benefits is undoubtedly prejudicial to him.

While the Department's contention of prejudice is without merit, it correctly asserts that in Scully's case the delay in filing his appeal was long. Seventeen days elapsed between the time the notice of determination became final and the filing of the appeal. The Department argues that in *Rasmussen* the court held that an appeal filed 3 days after the deadline was sufficient to deny good cause for waiver. *Rasmussen*, 98 Wn.2d at 848. This is not an accurate reading of the case. The court did not consider the issue of the shortness of the delay. In *Rasmussen*, the Department conceded that the delay was short and no party was prejudiced by it. The court, therefore, only considered the issue of whether the failure to file was excusable. *Rasmussen*, at 850.

It should be intuitively obvious that the length of delay tolerable will be inextricably intertwined with the excusability of error. One's right to appeal should not be denied because of the length of delay if the individual was unaware of the need to file the appeal. The delay, therefore, should be considered in light of the excusability of the error.

Excusability is the key issue in this case. Scully contends that the contradictory messages were responsible for his delay in appealing. The Department tries to absolve itself from responsibility for this confusion by stating that it was Scully's failure to provide a correct address that led to his delayed filing. The argument appears to be that while Scully received two contradictory messages on January 14, the request for waiver was mailed January 14. Prompt receipt of this notice at Scully's correct address would have clarified to him that an error had occurred in sending him the compensation check, and he could have easily filed his appeal prior to the January 21 deadline.

The Department's argument misses the mark for two reasons. First, assuming Scully did provide his current address from the start of the process, what would have happened? The determination notice was sent on January 11, 1983. Assuming that normal mail expectation time in the city is 3 days,[3] this notice would have arrived on January 14. This is the same day he received his first benefit check of $150. A request for waiver was mailed by the Department on January 14. Scully would have received it on January 17. At this time he would certainly be aware of the problem with his claim. On January 18, a redetermination notice was sent. This notice stated that Scully was entitled to $2,400, minus the $150 already paid. It also stated that it was final unless an appeal was filed within 10 days of January 18. Scully would receive this notice on January 21, the last day of his appeal period. Scully could have waited to file his appeal on January 21. If he had, receipt of this notice would have probably led him to

---

[3]This assumption was made by the ALJ.

believe that there was no longer a need to file an appeal. So, even if Scully had provided his proper address, there is no assurance that the message in the request for waiver would not be subsequently contradicted by later receipt of the notice of redetermination.

Second, it is important to note that in neither *Rasmussen* nor *Devine* was there any allegation that the Department had misled the applicant, resulting in an untimely filing. As stated in *Rasmussen*, "[a]bsent an allegation that they were misled by Department personnel, we are unable to find their good faith belief sufficient to establish good cause." *Rasmussen*, at 851–52.

Although Scully would have been well advised to pursue the matter on January 14 when he received the contradictory messages, those messages were misleading. His failure to provide the Department with a current address may have added to the confusion. This failure, however, will not absolve the Department from responsibility when it is apparent that even if the correct address was provided, the confused status of Scully's claim would not be clarified. The Department should not be allowed to avoid the consequences of its errors simply because a claimant has failed to provide his current address.

The receipt of misleading communications from the Department in this case was sufficient to constitute excusable error. Where the excusable error is based on such communications, "the shortness of delay" should be measured from the date the claimant has become aware of the need to appeal. Scully filed his appeal on the next working day following receipt of the "notice of waiver". This delay was not unduly long.

We, therefore, reverse the Department's conclusion that Scully did not have good cause for delay of his appeal and remand to the Department for a determination as to whether Scully is entitled to benefits under the unemployment compensation act.

## ATTORNEY'S FEES

Scully's attorney requested attorney's fees under RCW 50.32.160, which states in part:

It shall be unlawful for any attorney engaged in any appeal to the courts on behalf of an individual involving the individual's application for initial determination, or claim for waiting period credit, or claim for benefits to charge or receive any fee therein in excess of a reasonable fee to be fixed by the superior court in respect to the services performed in connection with the appeal taken thereto and to be fixed by the supreme court or the court of appeals in the event of an appeal thereto, and *if the decision of the commissioner shall be reversed or modified, such fee and the costs shall be payable out of the unemployment compensation administration fund . . .*

(Italics ours.)

■ Because Scully has been successful in his appeal, his attorney fees and costs should be awarded payable out of the unemployment compensation fund pursuant to RCW 50.32.160. *Ancheta v. Daly,* 77 Wn.2d 255, 265–67, 461 P.2d 531 (1969); *Vergeyle v. Department of Empl. Sec.,* 28 Wn. App. 399, 404–05, 623 P.2d 736 (1981). Counsel for Scully, however, has not fully complied with RAP 18.1 which states in part:

**(b) Argument in Brief.** The party should devote a section of the brief to the request for the fee or expenses. The request should not be made in the cost bill.

**(c) Affidavit.** Seven days prior to oral argument, the party should serve and file an affidavit in the appellate court detailing the expenses incurred and the services performed by counsel.

**(d) Oral Argument.** A party should include in oral argument a request for the fee or expenses and a reference to the affidavit on file.

Though Scully's attorney requested attorney's fees in his brief, he neither filed the required affidavit nor requested fees at oral argument. Failure to comply with RAP 18.1 may subject a party to the imposition of sanctions. RAP 1.2(b); RAP 18.9. In some cases, the sanction imposed has been denial of attorney's fees. *Topline Equip., Inc. v. Stan*

*Witty Land, Inc.,* 31 Wn. App. 86, 97, 639 P.2d 825 (1982). In appropriate cases, this court has tended to reject this harsh result. *Simonson v. Fendell,* 34 Wn. App. 324, 662 P.2d 54, *rev'd on other grounds,* 101 Wn.2d 88, 675 P.2d 1218 (1983); *Lindsay Credit Corp. v. Skarperud,* 33 Wn. App. 766, 657 P.2d 804 (1983).

In *Simonson v. Fendell, supra,* the court considered a situation in which an attorney requesting attorney's fees complied with RAP 18.1(c) and filed an affidavit of expenses, but failed to comply with RAP 18.1(b) and (d). *Simonson,* at 329–30. The court was disturbed by the fact that

> [t]he primary consequence of denying attorney's fees because an attorney did not fully comply with RAP 18.1 is to place the monetary loss upon the client, not the attorney. If attorney's fees are denied because his attorney failed to fully comply with RAP 18.1, it is the client who must pay his attorney instead of the fees being rightfully paid by the opposing party.

*Simonson,* at 330. The court looked to *Marketing Unlimited, Inc. v. Jefferson Chem. Co.,* 90 Wn.2d 410, 583 P.2d 630 (1978) where the prevailing party failed to comply with RAP 18.1(c) by not filing an affidavit of expenses. The court, nonetheless, granted the request for attorney's fees on the condition that the supporting affidavit be provided within 15 days from the filing of the opinion. *Marketing Unlimited,* at 414.

We must consider the policy underlying the rules expressed in RAP 1.2(a):

> These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

Without deciding whether RCW 50.32.160 has a permissive or mandatory meaning, it is apparent that the statute was designed to alleviate the financial burden of attorney's fees on a prevailing plaintiff in an unemployment compensation

case.

In recognition of the purpose of RCW 50.32.160 and the fact that there has been no prejudice to the Department, the cause is remanded to the Superior Court for the award and determination of reasonable attorney fees, in accordance with *Ancheta, supra. Vergeyle,* at 405. Ordinarily, reasonable attorney fees with respect to this appeal would be determined by this court. Because the other fees must be fixed by the Superior Court, we award attorney fees on appeal to Scully as fixed by the Superior Court. As a sanction for noncompliance with RAP 18.1(c) and (d), counsel for Scully shall pay $250 to the clerk of this court. *Simonson,* at 332.

Reversed and remanded.

SCHOLFIELD, A.C.J., and COLE, J. Pro Tem., concur.