[No. 7801–5–II.   Division Two.   August 1, 1986.]

THE BILL OF RIGHTS LEGAL FOUNDATION, *Appellant,* v.
THE EVERGREEN STATE COLLEGE, ET AL,
*Respondents.*

*Paul S. Mudrich,* for appellant.

*Kenneth O. Eikenberry, Attorney General, Richard M. Montecucco, Senior Assistant,* and *Robert V. Jensen, Assistant,* for respondents.

REED, J.—The Bill of Rights Legal Foundation appeals a summary judgment in favor of The Evergreen State College. Evergreen cross–appeals the denial of its motion for

attorney's fees. We affirm.

On February 15, 1983, the Bill of Rights Legal Foundation (BRLF), a nonprofit corporation, filed a complaint against Evergreen and against the First United Methodist Church to enjoin them from cosponsoring a lecture series held at the church in Olympia. The complaint also sought return to the State of all public moneys expended in connection with the lecture series.

The lecture series at issue, entitled "Piece of My Mind", was held at the church on weekday afternoons and was intended to provide, free of charge, a community forum on significant contemporary moral and ethical issues. The church and Evergreen had cosponsored similar programs in the years 1978–80. The 1983 series consisted of the following topics and speakers, as described in the promotional flyers:

January 19—State Supreme Court Justice Jim Dolliver explores "Principles and Rights: Awash in a Sea of Morality."

February 2—Citizen Lobbyist Jolene Unsoeld discusses "The Legislative Process: Is It Ethical?"

February 16—Evergreen faculty member Dr. Rudy Martin offers "A Defense of Secular Humanism."

March 2—State Superintendent of Public Instruction Frank Brouillet examines "Private School Growth: A Threat to Public Education?"

March 16—Saint Martin's professor Dr. Don Foran discusses "Striking at the Root or Hacking at the Branches: The Nonviolent Struggle in America."

April 6—Olympia physician Dr. Stuart Pritchard, "When Government Gains, Freedom Loses."

April 20—Dr. Brouillet, "Education: Where Are We Going?"

May 4—Evergreen Board of Trustees Vice-Chairman Thelma Jackson, "Education: Revolution and Changes."

May 18—KGY Radio News Director Bob MacLeod, "First Amendment: Media and Government."

The church's responsibilities in cosponsoring the program entailed their providing a room at the church for the lectures as well as refreshments and parking. The church and

Evergreen shared responsibility for selecting and scheduling the speakers. Evergreen was solely responsible for the printing of promotional flyers and advertisements in various college publications. The total 1983 expenditure for Evergreen was approximately $250. The total expenses incurred by the church are unknown.

The BRLF's complaint alleged that the expenditure of public moneys by a state institution, Evergreen, for the cosponsorship of "church activities" was a violation of the establishment clause of the federal constitution and article 1, section 11, and article 9, section 4 of the state constitution. The church counterclaimed for abuse of process and, along with Evergreen, for attorney's fees.

The BRLF and the defendants moved for summary judgment. The trial court denied the BRLF's motion, granted that of Evergreen and the church, and dismissed BRLF's complaint. The trial judge awarded attorney's fees to the church pursuant to RCW 4.84.185, but denied Evergreen's motion for fees. The BRLF has appealed the summary judgment against it and Evergreen has cross-appealed the denial of attorney's fees. The church is not a party to this appeal.

■ An appellate court reviews a summary judgment by conducting the same inquiry as the trial court, that is, to determine if there is a genuine issue of material fact when the evidence and all reasonable inferences from the evidence are considered in the light most favorable to the nonmoving party. CR 56(c); *Hontz v. State*, 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). Because the facts of this case essentially are undisputed, the question we must decide is whether Evergreen was entitled to judgment as a matter of law.

The issue then is whether, under the facts as presented, Evergreen's cosponsorship of the lecture series was a violation of the establishment clause of the First Amendment. The BRLF has chosen, on appeal, not to argue its case under the state constitution, so our discussion will consider

only the federal constitutional issue.[1]

The establishment clause of the First Amendment primarily proscribes "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Comm'n*, 397 U.S. 664, 668, 25 L. Ed. 2d 697, 90 S. Ct. 1409 (1970). Analysis in this area ordinarily involves consideration of three tests: (1) the law or governmental action must have a secular purpose; (2) its primary effect must neither advance nor inhibit religion; and (3) it must not further an excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 29 L. Ed. 2d 745, 91 S. Ct. 2105, 2111 (1971). Our analysis however, focuses on the excessive entanglement test because the BRLF has conceded that the lecture series had a secular purpose and has chosen not to argue that the series advanced or inhibited religion.

In *Lemon v. Kurtzman*, the Court set out three factors that are relevant in determining whether governmental action involves excessive government entanglement with religion: the character and purposes of the benefited institution, the nature of the aid the state provides, and the resulting relationship between the state and the religious institution. 403 U.S. at 615. The first two factors of the *Lemon* analysis cannot, however, easily be employed on the facts before us. Although the "benefited" institution here is a church, it is difficult to see how, in any measurable or tangible respect, it was benefited by the lecture series. "Aid" to a religious institution which does not confer more than indirect and incidental benefits does not offend the constitutional prohibition against establishment of religion. *Meek v. Pittenger*, 421 U.S. 349, 44 L. Ed. 2d 217, 95 S. Ct. 1753, 1763 (1975). The "aid" in this case, which the BRLF contends consists of state funds and state employee hours

---

[1]This is noteworthy because our State Supreme Court has indicated that the state constitution requires a far stricter separation of church and state than does the federal constitution. *Witters v. Commission for the Blind*, 102 Wn.2d 624, 626, 689 P.2d 53 (1984) (dictum), *rev'd*, 106 S. Ct. 748 (1986); *Weiss v. Bruno*, 82 Wn.2d 199, 206, 509 P.2d 973 (1973).

expended for the promotion of the lecture series and for the organization of the program and the selection of speakers, differs greatly from the aid provided in cases where excessive entanglement has been found. *Aguilar v. Felton,* ___ U.S. ___, 87 L. Ed. 2d 290, 105 S. Ct. 3232 (1985) (funds to pay salaries of public school teachers who provide remedial instruction to parochial students); *Meek v. Pittenger, supra* (state funding for auxiliary services to remedial and exceptional students in sectarian schools); *Lemon v. Kurtzman, supra* (reimbursement to church–affiliated schools for teachers' salaries, textbooks, and instructional materials in connection with the teaching of specific secular subjects). The problem of applying these two factors to the analysis here is indicative of the difficulty we have in finding any entanglement between church and state, let alone "excessive" entanglement. Application of the third factor is decisive because we find *no* resulting relationship between church and state.

A constitutionally precluded relationship between church and state is one that embodies or requires a "comprehensive and continuing state surveillance" to avoid an impermissible fostering of religion. *Aguilar v. Felton, supra; Wolman v. Walter,* 433 U.S. 229, 53 L. Ed. 2d 714, 97 S. Ct. 2593 (1977); *Meek v. Pittenger, supra; Lemon v. Kurtzman, supra.* Thus, a state program that provides for monitoring of the challenged program by public authorities to insure the absence of a religious message has been held to constitute excessive entanglement. *Aguilar v. Felton, supra.* Similarly, the Court has found excessive entanglement where, although no such state oversight has been provided for, such oversight has been deemed necessary by the Court, to avoid the fostering of religion where the potential for such exists. *Meek v. Pittenger, supra; Lemon v. Kurtzman, supra.*

In this case, no monitoring of the lecture series was provided nor do we find that any such state surveillance of the lecture series was necessary to guard against the fostering of religion. The setting here is vastly different from a sec-

tarian school where the audience basically is a captive one, consisting of impressionable school–age children. Here, the program was open to the public, was unarguably secular in nature, was directed primarily at a voluntary adult audience in downtown Olympia during the lunch hour, and was limited in duration. Contact between state employees and church officials was minimal. This is simply not an environment that generates the potential for an impermissible fostering of religion which in turn would generate a need for a comprehensive and continuing state surveillance.

In sum, the trial court did not err in concluding, as a matter of law, that no excessive entanglement between church and state resulted from the cosponsorship of the lecture series. Summary judgment was proper.

■ In its cross appeal, Evergreen argues that the BRLF's action was frivolous and that the trial court thus erred in concluding that it was not entitled to attorney's fees pursuant to RCW 4.84.185.[2] This court, however, will not overturn a decision to grant or deny attorney's fees absent a showing of abuse of discretion. *See Meyer v. UW,* 105 Wn.2d 847, 856, 719 P.2d 98 (1986); *Herman v. Herman,* 42 Wn. App. 6, 9, 707 P.2d 1374 (1985); *Duranceau v. Tacoma,* 37 Wn. App. 846, 849, 684 P.2d 1311 (1984). Therefore, the question here is not whether we agree with the trial court's conclusion that the BRLF's action was not frivolous, but whether that conclusion was the product of an exercise of discretion that was manifestly unreasonable or was based on untenable grounds or reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ A frivolous action has been defined as one that cannot be supported by any rational argument on the law or

---

[2]RCW 4.84.185 states, in pertinent part:

"In any civil action, the court having jurisdiction may, upon final judgment and written findings by the trial judge that the action, counterclaim, cross–claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross–claim, third party claim, or defense."

facts. *Bennett v. Passic,* 545 F.2d 1260, 1261 (10th Cir. 1976). However, allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, frivolous. *Hughes v. Rowe,* 449 U.S. 5, 66 L. Ed. 2d 163, 101 S. Ct. 173, 178 (1980). The court below denied attorney's fees to Evergreen on the ground that the issue of entanglement was "debatable," which we take to mean that some rational argument based upon the law or facts could be made to support it. We find that the trial court's denial of attorney's fees was not an abuse of discretion, especially upon consideration of the fact that the BRLF argued below on state constitutional grounds.[3]

█ Evergreen also requests attorney's fees on appeal. First, we note that Evergreen has not fully complied with the procedural requirements for its request. Evergreen did not devote a section of its brief to its request for attorney's fees on appeal, pursuant to RAP 18.1(b). However, procedural noncompliance does not necessarily warrant denial of attorney's fees, though sanctions, under RAP 18.9(a), may be appropriate. *Scully v. Department of Empl. Sec.,* 42 Wn. App. 596, 607, 712 P.2d 870 (1986). Second, we note that Evergreen has not asserted a proper ground for its request. Attorney's fees may be recovered only when authorized by contract, by statute, or by a recognized ground of equity. *Mellor v. Chamberlin,* 100 Wn.2d 643, 649, 673 P.2d 610 (1983). Evergreen requests attorney's fees under RCW 4.84.185. That statute, however, allows recovery of attorney's fees because of frivolous claims made at the trial court level, and is not a basis for recovery of fees on appeal. We are, thus, not provided with a basis for an award of attorney's fees on appeal.

█ Nevertheless, RAP 18.9(a) authorizes the appellate court, on its own initiative, to order sanctions against a party who brings an appeal for the purpose of delay. Sanctions may include, as compensatory damages, an award of attorney's fees to the opposing party. *See* Comment, RAP

---

[3]See footnote 1.

18.9, 86 Wn.2d 1272 (1976); *cf. Gall Landau Young Constr. Co. v. Hurlen Constr. Co.,* 39 Wn. App. 420, 432, 693 P.2d 207 (1985). In determining whether an appeal is brought for delay under RAP 18.9(a), "our primary inquiry is whether, when considering the record as a whole, the appeal is frivolous, *i.e.,* whether it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Streater v. White,* 26 Wn. App. 430, 434, 613 P.2d 187 (1980). All doubts as to whether an appeal is frivolous should be resolved in favor of the appellant. *Streater v. White,* 26 Wn. App. at 435.

Applying this standard, we do not find the appeal frivolous. Attorney's fees are denied.

The judgment of the trial court is affirmed.

WORSWICK, C.J., and PETRICH, J., concur.