IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHEN LUDWIG, a single man; ROSS KLINGELE and ARRIETTE BURN, a marital community,<br><br>Appellants,<br><br>v.<br><br>CITY OF MOUNTLAKE TERRACE, a municipal corporation,<br><br>Respondent. | No. 85537-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Stephen Ludwig, Ross Klingele, and Arriette Burn (collectively, the Homeowners) appeal the dismissal of their complaint against the City of Mountlake Terrace (City). They also challenge the trial court's award of attorney fees and CR 11 sanctions. We conclude that the trial court properly dismissed the Homeowners' complaint on claim preclusion grounds and did not abuse its discretion by awarding attorney fees and imposing sanctions. Thus, we affirm.

FACTS

In February 2014, the Homeowners purchased a property on 226th Place Southwest in Mountlake Terrace (the Property). The Property is adjacent to Hall Creek, which the City uses as a stormwater conveyance.

In 2017, the Homeowners sued the City. According to the Homeowners,[1] their complaint "alleged negligence on the part of the City for damage to the bank armor that defended the west foundation wall of their house" from Hall Creek (2017 Lawsuit). The matter was tried to the bench in September 2022. The court found that "[a] bulkhead and rockery exist on the Property to protect the home from migration of [Hall Creek] and from flooding." It also found,

> In 1969, the City contracted with [the Reid-Middleton firm (RMA)] to construct a concrete box culvert replacing an existing corrugated metal pipe culvert carrying Hall Creek beneath 226th Pl[ace]. The plan for this culvert called for existing rockery and the bulkhead to remain in place, the existing creek channel to be lowered by about one foot, and 150-pound rocks to be installed in a contiguous row along the creek banks. . . . The purpose of these 150-pound rocks was to confine the water at lower levels within the channel and to protect the existing bank.

The court found that the City did not install the row of 150-pound rocks as specified by RMA.

The court also found that in April 2014, while conducting repairs on the Property, one of the Homeowners "discovered the bulkhead had been undermined and soil behind the bulkhead had been removed, creating a cavity approximately sixteen feet long, three to four feet wide, and one to two feet deep behind the bulkhead," and "[i]t was later learned that this cavity had been created by scouring of water from Hall Creek, which over time, allowed water to enter the Property side of the bulkhead and create the cavity."[2] Further, the court found that the Homeowners then hired a professional engineer to design a repair; "[h]owever, [the Homeowners] could not afford [the] repair as designed, and

---

[1] The 2017 complaint is not in the record.
[2] Bold face omitted.

2

decided to file suit against the City."

The court concluded that "the City assumed a duty when it undertook the [1970] project to install the box culvert pursuant to the [RMA] plans" and that the City breached that duty. But it found that the Homeowners did not "prove th[e] failure to properly install the 150-pound rocks proximately caused the damage to the Property." In particular, the court found that "the design of the bulkhead (no footing, no reinforcement), along with the angle of the stormwater striking it, could [have] themselves caused the damage." And because the Homeowners failed to prove proximate cause, their negligence claim failed. The court entered its findings and conclusions in the 2017 Lawsuit on February 3, 2023.

On April 26, 2023, the Homeowners filed the instant lawsuit, seeking injunctive relief. They alleged substantially the same background facts described above, i.e., that (1) they purchased the Property in February 2014, (2) the Property includes a portion of Hall Creek, which the City uses as a stormwater conveyance, (3) the City undertook a culvert replacement project in 1970, (4) the Homeowners discovered a sinkhole behind the bulkhead in 2014, which was caused by scouring from Hall Creek, and (5) they sued the City in 2017 after the remedy designed by their engineer was beyond what they could afford. They also alleged,

> The City . . . excavated a deeper channel . . . to accommodate the deeper culvert . . . . Plans for this work, provided by [RMA], specified that the banks of the deeper channel should be protected by rows of 150-pound rocks. As any reasonable person could surmise, a deeper channel would require deeper bank-protection. Yet the City, in breach of its duty to properly construct the channel changes . . . , neglected to install this protection. After failing to place the *specified* protection, the City then failed to provide *any*

3

protection at all for the deeper channel. Nor did the City perform any inspection, monitoring or maintenance to identify and prevent damaging scour along the vulnerable deeper banks at [the] [P]roperty.

The Homeowners alleged that "[l]acking any protection, the deeper channel bank [on the Property side of the creek] has been entirely scoured away" and that the scour "eventually undercut[ the] existing concrete bulkhead that had previously protected the west foundation wall of [the Property]," causing damages to the Homeowners. The Homeowners requested an injunction directing the City to "cease and desist directing concentrated and damaging stormwater against Hall Creek's vulnerable east channel bank near [the Property], without also providing proper protection for said bank" and to "immediately maintain, repair, or replace Hall Creek's already damaged bank armor along [the Property] to current standards in accordance with its established duty."

In May 2023, the City moved under CR 12(b)(6) to dismiss the Homeowners' complaint, arguing that it was time-barred, the 2017 Lawsuit precluded the Homeowners' claims herein, and those claims were also foreclosed by laches. The trial court granted the City's motion to dismiss as well as its subsequent motion for an award of attorney fees and an additional $1,000 in CR 11 sanctions, for which the Homeowners and their attorney were jointly and severally liable.

The Homeowners appeal.

ANALYSIS

I.      Motion to Dismiss

The Homeowners argue that the trial court erred by dismissing their

4

complaint. Because claim preclusion barred the complaint, we disagree.[3]

Claim preclusion, historically referred to as res judicata, is an equitable doctrine that precludes relitigation of already determined causes. Weaver v. City of Everett, 194 Wn.2d 464, 472-73, 450 P.3d 177 (2019). It prevents relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits. Id. at 480. In addition to the threshold requirement of a final judgment on the merits in the prior suit, the party asserting claim preclusion has the burden to establish that the prior action and the challenged action have "concurrence of identity" in four areas: (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of persons for or against whom the claim is made. Id. All four elements must be satisfied to establish claim preclusion. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 866, 93 P.3d 108 (2004). "Because it is a question of law, we review a determination that claim preclusion applies de novo." Hassan v. GCA Prod. Servs., Inc., 17 Wn. App. 2d 625, 633, 487 P.3d 203 (2021).

Here, it is undisputed that the 2017 Lawsuit ended in a final judgment on the merits. It is also undisputed that the 2017 Lawsuit and the instant proceeding involve the same parties and quality of persons. Additionally, although "Washington law does not specify how precise[ly] the subject matter in the first and second suit must coincide," Eugster v. Wash. State Bar Ass'n, 198 Wn. App. 758, 787, 397 P.3d 131 (2017), the two proceedings plainly involve the same subject matter, i.e., the City's alleged responsibility to repair the damage that Hall

---

[3] Because we affirm the dismissal on this ground, we need not decide whether dismissal was also proper based on the statute of limitations or laches.

Creek has caused to the Property. Cf. id. (disciplinary proceeding against attorney involved the same subject matter as attorney's later lawsuit claiming the disciplinary process violates due process in that both proceedings "include[ ] the [bar association's] disciplinary process").

The remaining question, then, is whether the 2017 Lawsuit and the instant proceeding have concurrence of identity in cause of action. "[I]dentity of causes of action 'cannot be determined precisely by mechanistic application of a simple test.' " Rains v. State, 100 Wn.2d 660, 663-64, 674 P.2d 165 (1983) (quoting Abrahmson v. Univ. of Hawaii, 594 F.2d 202, 206 (9th Cir. 1979))). To aid in the analysis, courts have considered the following four factors:

> "(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

Rains, 100 Wn.2d at 664 (alteration in original) (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). "These four factors are analytical tools; it is not necessary that all four factors be present to bar the claim." Ensley v. Pitcher, 152 Wn. App. 891, 903, 222 P.3d 99 (2009). Ultimately, the question is whether the later claim is one that "*might* or should have been litigated [or that] was litigated" in the earlier proceeding. Hadley v. Cowan, 60 Wn. App. 433, 441, 804 P.2d 1271 (1991); see also Norris v. Norris, 95 Wn.2d 124, 130, 622 P.2d 816 (1980) (claim preclusion "acts to prevent relitigation of claims that were *or should have been* decided among the parties in an earlier proceeding" (emphasis added)).

6

The Homeowners assert that there is no identity in cause of action because the 2017 Lawsuit involved "very specific allegations about construction negligence," whereas in the instant lawsuit, the Homeowners "claim that the City has failed to maintain and repair their waterway and is in continuing breach of its duty to properly maintain and repair the waterway today." But these are both claims that the City has breached a duty to maintain and/or repair the waterway. Indeed, the Homeowners themselves specifically rely on the findings from the 2017 Lawsuit as having established the existence of that duty, stating that they filed the second lawsuit "based on the Trial Court's finding that the City did, indeed, have a duty of care to repair and maintain the waterway." While the Homeowners now allege that the scope of the City's duty was broader than a duty of care in following RMA's construction plans and, thus, the City breached an ongoing duty by its failure to repair and maintain the waterway since, they could have and should have brought this theory forward in the 2017 Lawsuit. See Eugster, 198 Wn. App. at 790 ("Res judicata applies not only to points on which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point that properly belonged to the subject of the litigation, *and which the parties, exercising reasonable diligence, might have brought forward at that time*." (emphasis added)); Sound Built Homes, Inc. v. Windermere Real Estate/South, Inc., 118 Wn. App. 617, 630, 72 P.3d 788 (2003) (" 'The law of res judicata now reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so.' " (internal

quotation marks omitted) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) cmt. a (AM. LAW INST. 1982))).

To this end, the Homeowners concede that they sought an injunction in the 2017 Lawsuit based on the theory they allege herein, and that the court denied it because there was an adequate remedy at law, i.e., monetary damages for negligence. Considering the first Rains factor, whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, allowing the Homeowners to proceed in this lawsuit would impair the City's interest in maintaining the judgment in the 2017 Lawsuit that concluded it was not liable to the Homeowners. Similarly, the third Rains factor, whether the two suits involve infringement of the same right, in both suits, the Homeowners allege an interest in redress for the City's breach of a duty to maintain and repair the Hall Creek waterway.

As to the second Rains factor, whether substantially the same evidence is presented in the two actions, and the fourth factor, whether the two suits arise out of the same transactional nucleus of facts, both lawsuits arise from and depend on evidence of what the City has or has not done since it undertook the 1970 culvert installation project, which was the basis on which the trial court in the 2017 Lawsuit found that the City "assumed a duty." Indeed, although the full record from the prior lawsuit is not before us, the Homeowners represented below that in the 2017 Lawsuit, they "advanced facts that would have supported their current claim," and the court's findings in the prior lawsuit are consistent with this statement.

8

Yet the Homeowners now assert that because their negligence claim "was denied at trial, but no final judgment was entered as to injunctive relief," they may maintain a claim for injunctive relief because it is "the only legally cognizable cause of action left." This assertion ignores that "an injunction is a remedy, *not an independent cause of action*." Markoff v. Puget Sound Energy, Inc., 9 Wn. App. 2d 833, 851, 447 P.3d 577 (2019) (emphasis added). Where the Homeowners not only had an opportunity—but tried and failed—to prove their entitlement to monetary relief against the City, they may not now pursue injunctive relief premised on the same facts, which were known to them at the time of the earlier lawsuit. See Eugster, 198 Wn. App. at 790 ("A matter should have been raised and decided earlier if it is merely an alternate theory of recovery or an alternate remedy."); cf. 15 DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 44:2 (3d ed. Supp. 2023) ("If the substantive claim on which a request for injunctive relief is based is dismissed, there is no longer a right that can be vindicated or protected by an injunction.").

In short, the Homeowner's complaint seeks to relitigate the 2017 Lawsuit. And although not addressed by the parties, as discussed above, consideration of the Rains factors also supports a determination that claim preclusion applies. The trial court did not err by dismissing the Homeowners' complaint.

II.      Attorney Fees and Sanctions

The Homeowners next argue that the trial court erred by awarding the City its attorney fees under RCW 4.84.185 and imposing CR 11 sanctions. Again, we disagree.

RCW 4.84.185 provides that a court in a civil action "may, upon written findings by the judge that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action." CR 11(a) provides that an attorney or party signing a pleading, motion, or legal memorandum certifies that they have read it and that it is, to the best of the attorney or party's knowledge, information, and belief, formed after a reasonable inquiry, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, not interposed for any improper purpose. "If a pleading, motion, or legal memorandum is signed in violation of this rule, the court . . . may impose upon the person who signed it, a represented party, or both, an appropriate sanction." CR 11(a).

We review awards under RCW 4.84.185 and CR 11 for abuse of discretion. State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Sw. Suburban Sewer Dist. v. Fish, 17 Wn. App. 2d 833, 838, 488 P.3d 839 (2021).

Here, the trial court had a tenable basis to award attorney fees and impose a sanction. There was evidence in the record that after the Homeowners filed a pre-suit tort claim with the City, counsel for the City wrote to them,

> It appears from your tort claim form that you are making an identical claim for damages ("to repair and maintain bank armor") that has already been adjudicated in the [2017 L]awsuit. As you recall, the Superior Court, after a full trial, found that you did not meet your

10

> burden to prove the City proximately caused damage to your property's bank armor/bulkhead.

The City attached a copy of the findings and conclusions from the 2017 Lawsuit, as well as an order denying the Homeowners' subsequent motion for reconsideration. The City also explained that the Homeowners' attempt to relitigate their claim was prohibited by the doctrine of claim preclusion. And, the City notified the Homeowners that if they proceeded to file suit, the City would pursue sanctions under both RCW 4.84.185 and CR 11. Yet the Homeowners pressed on, pleading a claim for an alternate remedy that even they acknowledged was premised on the same facts they advanced in the 2017 Lawsuit.

Furthermore, as the City accurately observes, the Homeowners' claim in this lawsuit fundamentally arises from allegations of negligence: The Homeowners assert that the City breached a duty of care with regard to the maintenance and repair of the Hall Creek waterway. Cf. Callahan v. Keystone Fireworks Mfg. Co., 72 Wn.2d 823, 826, 435 P.2d 626 (1967) (negligence connotes a "failure of duty to exercise due care"). This claim is subject to RCW 4.16.130's two-year statute of limitations. Wallace v. Lewis County, 134 Wn. App. 1, 13, 137 P.3d 101 (2006) ("An action for negligent injury to real property is subject to a two-year statute of limitations." (citing RCW 4.16.130)). And it accrued at the latest in 2014, when the Homeowners undisputedly discovered the damage to the Property. See id. at 13 (action for negligent injury to real property "accrues when the plaintiff suffers some form of injury to his real property," and "[w]here there is a delay between the injury and the plaintiff's

discovery of it, the court may apply the discovery rule"). Yet the Homeowners did not file this lawsuit until April 2023, some nine years later.

The City pointed this out in its motion to dismiss and also asserted that at *best*, the Homeowners' claim was subject to the three-year limitations period in RCW 4.16.080.[4] It also gave notice, again, that it intended to seek an award of attorney fees and CR 11 sanctions. The Homeowners responded by asserting that "[o]ngoing inaction in the face of ongoing damage . . . *may* constitute a 'wrong of a continuing nature.' "[5] But the Homeowners provided no legal support for such a rule, much less any analysis as to why it applies here. When pressed on this in relation to the City's later motion for fees and sanctions, the Homeowners cited only a criminal law treatise and a handful of non-Washington criminal cases, again without any analysis as to why those authorities apply here. The Homeowners also argued that "the case at bar is a logical continuation of the [2017 Lawsuit], and therefore a legitimate inheritor of that case's timely filing." But they cited absolutely no authority for this "logical continuation" theory, which if anything, bolstered the trial court's conclusion that claim preclusion applies. See Spokane Rsch. & Def. Fund v. City of Spokane, 155 Wn.2d 89, 99, 117 P.3d

---

[4] On appeal, the Homeowners contend that "because no proof of the applicability of any one of the stated statutes is offered," and because the City did not "properly repl[y] to [their] assertion concerning tolling of the statute of limitations," the City did not meet its burden to show that the Homeowners' complaint was time barred. This contention is without merit. The City demonstrated that however characterized, the Homeowners' claims were subject to, at most, a three-year limitations period. The Homeowners' failure to specify the nature of their claims does not amount to an argument that neither a two- or three-year statute of limitations applies. And it was the Homeowners, not the City, who bore the burden to show that tolling applied. See Rivas v. Overlake Hosp. Med. Ctr., 164 Wn.2d 261, 267, 189 P.3d 753 (2008) ("A plaintiff . . . carries the burden of proof if he or she alleges that the statute [of limitations] was tolled and does not bar the claim.").

[5] Emphasis added.

1117 (2005) ("Res judicata, or claim preclusion, is intended to prevent piecemeal litigation and ensure the finality of judgments."). Under the circumstances, the trial court did not abuse its discretion by finding that the Homeowners' complaint was not well grounded in law or fact and was frivolous and advanced without reasonable cause.

The Homeowners disagree and point out that in a declaration in support of dismissal, the City's counsel stated the nature of the Homeowners' claims was "essentially that the City caused flooding of [the Property]." The Homeowners assert that because they "have never claimed damages for 'flooding,' " the attorney fee award was unreasonable. But where both of the Homeowners' lawsuits alleged that stormwater runoff was damaging the Property, the trial court was within its discretion to reject the Homeowners' hypertechnical focus on the use of the term "flooding" to describe the essence of the Homeowners' claims. The Homeowners also argue that the CR 11 sanctions were manifestly unreasonable because "[i]n essence, having been unsuccessful in its earlier attempt to hold the City liable for negligence in the construction of the culvert changes at [the P]roperty, the only legally cognizable action left to . . . seek redress for the ongoing harm was and is a suit in equity for an affirmative injunction." But as discussed, this argument mischaracterizes injunctive relief as an independent cause of action, as distinct from a remedy. The Homeowners fail to show that the trial court erred in awarding attorney fees to the City and imposing CR 11 sanctions.

13

III.    Fees on Appeal

As a final matter, the City requests an award of fees on appeal. "Washington State courts follow the 'American Rule'—even as to a prevailing party, 'attorney fees are not available as costs or damages absent a contract, statute, or recognized ground in equity.' " LK Operating, LLC v. The Collection Grp., 181 Wn.2d 117, 123, 330 P.3d 190 (2014) (quoting City of Seattle v. McCready, 131 Wn.2d 266, 275, 931 P.2d 156 (1997)). The City requests fees under RCW 4.84.185, but that statute does not authorize an award of fees on appeal. Bill of Rights Legal Found. v. Evergreen State Coll., 44 Wn. App. 690, 697, 723 P.2d 483 (1986); see also Hanna v. Margitan, 193 Wn. App. 596, 614, 373 P.3d 300 (2016) ("Because RCW 4.84.185 requires written findings to support an award of attorney fees . . . , and appellate courts do not make findings, RCW 4.84.185 does not authorize an award of fees on appeal."). Accordingly, we deny the City's request for an award of fees on appeal.

We affirm.

_____
Chung, J.

WE CONCUR:

_____
Díaz, J.

_____
Dwyer, J.