[No. 8480-1-I. Division One. January 18, 1982.]

DONNA DOYLE, ET AL, *Appellants,* v. PLANNED PARENTHOOD OF SEATTLE–KING COUNTY, INC., ET AL, *Respondents.*

*Janet L. Eaton* and *Schroeter, Goldmark & Bender, P.S.,* for appellants.

*Megan E. Graves, Merrick, Hofstedt & Lindsey, Chris J. Rigos,* and *Lee, Smart, Cook, Biehl & Martin,* for respondents.

CALLOW, J.—Donna Doyle appeals from a Superior Court order granting summary judgment to the defendants and refusing to permit amendment of her complaint to assert a strict products liability claim. The primary issue is whether her claims against two of the defendants are outlawed by

the passing of the period of the statutes of limitation.

On May 19, 1969, Doyle contacted Planned Parenthood of Seattle–King County, Inc. and sought advice regarding contraceptives. She was examined by Dr. Julius Butler and fitted with a Majzlin Spring intrauterine device (IUD). Planned Parenthood did not charge for either the examination or the IUD. Doyle returned for the recommended annual checkup on June 11, 1970, but had no further contact with Planned Parenthood or its physicians.

In August 1970, Planned Parenthood stopped recommending the Majzlin Spring IUD due to problems encountered in removing the device. The Food and Drug Administration ordered the Majzlin Spring IUD removed from the market in 1973 after numerous reports of hazardous consequences stemming from its use. As patients came in for their annual examinations, Planned Parenthood would remove the IUD. They also reviewed their patient account cards and attempted to call each patient fitted with the Majzlin Spring. They unsuccessfully attempted to contact Doyle on November 15, 1975.

Doyle began experiencing physical problems in the pelvic area in 1975. She contacted Dr. Patrick McNellis on April 9, 1975, and informed him that she used the IUD. McNellis referred her to Dr. Beach Barrett, who treated Doyle for 6 months. Barrett did not detect problems with the IUD or recommend its removal. On January 18, 1977, Doyle was admitted to a Seattle hospital suffering from an acute general pelvic infection caused by the Majzlin Spring IUD. Nine days later she underwent a complete hysterectomy.

Doyle commenced suit on August 8, 1978, alleging negligence and medical malpractice against Planned Parenthood and Drs. Butler, McNellis and Barrett. In August 1979, summary judgment was granted to Dr. McNellis. Planned Parenthood and Dr. Butler were granted summary judgment on January 14, 1980, on the grounds that the statute of limitations had expired. A written order was filed 2 weeks later. Between those dates Doyle retained new counsel, who moved for reconsideration of the dismissal as well

as for an order permitting Doyle to amend her complaint to allege a strict products liability claim. The court denied both motions.

Contrary to Doyle's argument on appeal, there are no material factual issues in dispute. The question is whether the plaintiff's claim is time–barred as against Planned Parenthood and Dr. Butler. We hold that it is.

Doyle first contends that Planned Parenthood's failure to contact her and warn her to remove the IUD constitutes a continuing tort which tolls the running of the statute of limitations. The governing statute of limitations is the 1971 act, Laws of 1971, ch. 80, § 1, p. 194–95 (codified at RCW 4.16.350), which provides:

> Any civil action for damages against . . . a member of the healing arts including, but not limited to, a physician . . . based upon alleged professional negligence shall be commenced within (1) three years from the date of the alleged wrongful act, or (2) one year from the time that plaintiff discovers the injury or condition was caused by the wrongful act, whichever period of time expires last.

For Doyle to fall under the 3–year provision, she must prove a negligent act or omission within 3 years of the filing of the complaint. She asserts that Planned Parenthood's failure to warn her of the dangers of the IUD was a continuing tort lasting until the device was surgically removed. We disagree. The continuing tort doctrine in the area of medical malpractice was succeeded in 1971 by the designation of a "date of the alleged wrongful act". Laws of 1971, ch. 80, § 1, p. 195. A wrongful act cannot occur after the termination of the physician–patient relationship. *Bixler v. Bowman,* 94 Wn.2d 146, 614 P.2d 1290 (1980); *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969). The wrongful act alleged in Doyle's complaint is the 1969 insertion of the IUD. The physician–patient relationship between Doyle and Planned Parenthood necessarily ended no later than Doyle's 1975 consultation with another doctor. *See Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966); *Hotelling v. Walther,* 169 Or. 559, 130 P.2d 944

(1942); W. Prosser, *Torts* § 30, at 144 (4th ed. 1971).

Doyle argues that Planned Parenthood's attempt, on November 15, 1975, to contact and warn her is evidence of a continuing physician–patient relationship, or represents a gratuitous undertaking to warn a person of a danger. The evidence shows that Planned Parenthood reviewed their files and attempted to call each person who had the IUD installed. This is not, however, evidence that the physician–patient relationship was continuing in November 1975. Doyle *last contacted Planned Parenthood in 1970*; she consulted other doctors about her pelvic–area pains in April 1975. The physician–patient relationship had ended by that time and was not revived by the attempts to telephone Doyle. Nor do we view this as a gratuitous undertaking. Persons are required to exercise reasonable care to warn others in danger. Such persons are subject to liability if their failure to exercise reasonable care increases the risk of harm to those they are trying to aid, or if harm is suffered because of another's reliance upon the undertaking. *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975); Restatement (Second) of Torts § 323 (1966). The attempted phone call in 1975 neither increased the risk of harm nor induced reliance.

Finally, Doyle asserts that the trial court abused its discretion in refusing to allow her to amend her complaint to add a strict products liability claim. She argues that Planned Parenthood sold IUDs in a defective condition unreasonably dangerous to the user, and that they should be strictly liable for the physical harm caused by the product. Planned Parenthood characterizes the situation as the gratuitous rendering of a service and not the sale of a product. They contend that fitting Doyle with the IUD was incidental to the services they furnish and is not subject to strict liability.

Leave to amend a complaint is to be freely given when justice requires. CR 15(a). The motion must be in writing and state with particularity the grounds therefor. CR 7(b). When a motion to amend is made after the

adverse granting of summary judgment, the normal course of proceedings is disrupted and the trial court should consider whether the motion could have been timely made earlier in the litigation. *Trust Fund Servs. v. Glasscar, Inc.*, 19 Wn. App. 736, 577 P.2d 980 (1978); 3A Wash. Prac. § 5182 (3d ed. 1980).

In addition to timeliness, the court may consider the probable merit or futility of the amendments requested. Doyle added an entirely new theory to her cause of action, that of strict products liability. This theory has not been extended to physicians and hospitals, who have been held to furnish services and not products. Restatement (Second) of Torts § 402A (1966). The Wisconsin Supreme Court considered this issue in *Hoven v. Kelble,* 79 Wis. 2d 444, 256 N.W.2d 379 (1977), and held that the medical profession should not be held to strict liability. Outlining the competing interests at issue, the court held:

> The provider of medical services appears to stand in substantially the same position with respect to the patient as the seller of goods does with the consumer. The typical purchaser of medical services cannot evaluate the quality of care offered because medical services are complex and infrequently bought. The medical care market gives the purchaser little assistance in enabling the purchaser to evaluate what he or she is buying. It is generally the physician—not the patient—who determines the kind of services to be rendered and how often. It is the physician not the patient who prescribes other goods and services, *e.g.,* drugs, therapy, and hospitalization, that should supplement the physician's services. The physician is in a better position than the patient to determine and improve the quality of the services, and the patient's reliance on the doctor's skill, care and reputation is perhaps greater than the reliance of the consumer of goods. The difficulties faced by plaintiffs in carrying the burden of proving negligence on the part of a doctor are well known. *See* Prosser, *Law of Torts,* sec. 39, p. 223 (4th ed. 1971). The hospital and doctor are in a better position than the patient to bear and distribute the risk of loss.

However, other considerations call for caution in mov-

ing in the direction the plaintiffs advocate. There are differences between the rendition of medical services and transactions in goods (or perhaps other types of services as well). Medical and many other professional services tend often to be experimental in nature, dependent on factors beyond the control of the professional, and devoid of certainty or assurance of results. Medical services are an absolute necessity to society, and they must be readily available to the people. It is said that strict liability will inevitably increase the cost for medical services, which might make them beyond the means of many consumers, and that imposition of strict liability might hamper progress in developing new medicines and medical techniques.

(Footnotes omitted.) *Hoven v. Kelble, supra* at 468–70.

We find no Washington authority for Doyle's proposed addition of a strict liability claim against Planned Parenthood. Given the granting of summary judgment, the untimely motion to amend the complaint, and the lack of legal support for the proposed theory of liability, we conclude that the trial court did not err in denying the motion to amend the complaint.

The summary judgment of dismissal of Planned Parenthood and Dr. Butler is affirmed.

RINGOLD and CORBETT, JJ., concur.