Janice COMSTOCK, as Personal Representative of the Estate of Reva A. Nelson, Petitioner,

v.

Robert COLLIER, M.D., Respondent.

No. 84SC482.

Supreme Court of Colorado, En Banc.

May 26, 1987.

Rehearing Denied June 15, 1987.

Green & Josefiak, Mary M. Josefiak, Denver, for petitioner.

Long & Jaudon, P.C., Joseph C. Jaudon, Robert M. Baldwin, Denver, for respondent.

KIRSHBAUM, Justice.

In *Comstock v. Collier*, 694 P.2d 1282 (Colo.App.1984), the Court of Appeals affirmed in part and reversed in part a trial court order granting a motion for summary judgment filed by the respondent-defendant, Robert Collier, and dismissing certain medical negligence claims alleged against Collier by the petitioner-plaintiff, the Estate of Reva A. Nelson. The Court of Appeals held that the medical malpractice statute of limitation, § 13–80–105(1), 6 C.R.S. (1982 Supp.), barred all of the plaintiff's claims except one claim based on conduct allegedly occurring within the three-year period immediately preceding the commencement of the action. We granted certiorari to review that holding, and now conclude that the plaintiff's claims are not barred by section 13–80–105(1).

I

Nelson was treated by Collier from 1961 to August of 1982 for a condition diagnosed by Collier as chronic phlebitis.[1] From 1967 to 1982, Collier prescribed the drug "Talwin," a morphine-based painkiller. Following Collier's instructions, Nelson injected the drug into her legs five times each day. On December 1, 1982, other physicians diagnosed Nelson as having cancer in those spots where the Talwin was injected.

On January 17, 1983, Collier was served with a complaint alleging, *inter alia*, that he had been negligent "in his treatment and diagnosis of ... Reva A. Nelson."[2] Collier subsequently filed a motion for summary judgment under C.R.C.P. 56, asserting that the plaintiff's claims were absolutely barred under the applicable statute of limitation. The trial court granted the motion and ordered the complaint as to Collier dismissed without prejudice. The Court of Appeals recognized that section 13–80–105(1) does not bar completely claims alleging misdiagnosis, but concluded that the plaintiff's claims pertained only to allegedly negligent treatment.

II

■ The statute of limitation in effect when a cause of action accrues governs the

---

1. The facts recited in the opinion are taken from the allegations of the complaint and the filings connected with the summary judgment motion. We express no opinion as to the truth of these facts.

2. Nelson died on January 18, 1983, and her personal representative, Janice Comstock, was substituted as the plaintiff. Section 13–21–202, 6 C.R.S. (1973), provides that an action for damages survives the death of the individual entitled to maintain the action when the death is caused by a wrongful act, neglect or default which is the subject of the action.

time within which a civil action must be commenced. *Mishek v. Stanton,* 200 Colo. 514, 616 P.2d 135 (1980). The statute of limitation in effect at the time Nelson discovered her claim provided, in pertinent part, as follows:[3]

**13–80–105 Actions barred in two years.** (1) No person shall be permitted to maintain an action, whether such action sounds in tort or contract, to recover damages from ... any person licensed in this state or any other state to practice medicine ... on account of the alleged negligence, breach of contract, or lack of informed consent of such person in the practice of the profession for which he is licensed or on account of his failure to possess or exercise that degree of skill which he actually or impliedly represented, promised, or agreed that he did possess and would exercise, *unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury. In no event may such action be instituted more than three years after the act or omission which gave rise thereto,* subject to the following exceptions:

(a) If the act or omission which gave rise to the cause of action was knowingly concealed by the person committing such act or omission, or, if such act or omission consisted of leaving an unauthorized foreign object in the body of the patient, then such action may be instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the act or omission....

6 C.R.S. (1982 Supp.) (emphasis added). Under this statutory scheme, actions alleging negligence by a physician must be commenced within two years of the date the plaintiff discovered, or in the exercise of

reasonable diligence should have discovered, the injury. This legislatively declared "discovery rule" eliminates the unfairness of prohibiting the filing of an action before a patient becomes aware of the existence of a claim. *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1970).

In balancing the need to permit patients to recover losses from injuries caused by negligent conduct of their physicians against the need of physicians to practice medicine without fear of becoming defendants in suits alleging conduct that occurred in the past, which allegations, because of the passage of time, could prove difficult to refute, the General Assembly also established a period of time after which very few medical malpractice actions could be filed even if the injury were later discovered. With the exception of claims based upon knowing concealment or the leaving of an unauthorized foreign object in the patient's body, the General Assembly required that all claims alleging negligent conduct by a physician must be filed within the period of repose—that is, within three years of the act or omission giving rise to the action. § 13–80–105(1).

In *Austin v. Litvak,* 682 P.2d 41 (Colo. 1984), this court concluded that, in view of provisions of the United States and Colorado Constitutions, a claim alleging injury caused by a physician's negligent misdiagnosis must also be deemed exempt from the repose provision of section 13–80–105. The plurality opinion reached this conclusion on the basis of equal protection notions. The concurring opinion was based on the provisions of the Colorado Constitution, article II, section 6. The plurality reasoned that there is no rational basis to deny relief to a patient who cannot within any fixed time period reasonably learn that he or she has been injured as the result of negligent conduct by a physician because the conduct consists of wrongful diagnosis

---

**3.** In 1986, the General Assembly repealed and reenacted in different form the statute governing limitation periods applicable to medical malpractice actions. Section 13–80–102(1), 6 C.R.S. (1986 Supp.), provides that negligence actions must be commenced within two years after the cause of action accrues. Section 13–

80–108(1), 6 C.R.S. (1986 Supp.), provides that a cause of action for injury to person accrues on the "date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." No statute of repose was reenacted.

yet permit relief for a patient who cannot within any fixed time period reasonably learn that he or she has been so injured because the conduct was concealed. In both cases, no amount of reasonable diligence would permit the discovery of the injury. In both cases, the legislative policy of permitting an action by a person who through no lack of diligence does not learn of the injury until some time after the causal conduct ended is undermined by a contrary rule.

■ The complaint in this action alleges that "because of the diagnosis of chronic phlebitis, [Nelson] was kept a semi-invalid for twenty years," that Collier "failed to properly treat [Nelson] and continued to misprescribe Talwin" and that Collier "failed to comply with the general principles and standards of care of his profession in his treatment and diagnosis of [Nelson]." [4] A complaint is sufficient to sustain an action if it affords the defendant reasonable notice of the general nature of the claims alleged. C.R.C.P. 8(a); *Hadley v. Moffat County School Dist.*, 681 P.2d 938 (Colo.1984); *Vance v. St. Charles Mesa Water Ass'n*, 170 Colo. 313, 460 P.2d 782 (1969). Summary judgment is appropriate only if the pleadings "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." C.R.C.P. 56(c). When read in the light most favorable to the plaintiff, as it must be, the complaint in this action alleges that Collier was negligent in his diagnosis of Nelson's illness. So viewed, the complaint reasonably stated a claim for negligent misdiagnosis that is an exception to the repose period of the statute.[5]

## III

■ The plaintiff asserts that the two-year statute of limitation begins to run against the negligent treatment claim only at the end of a continuous course of improper treatment. In reaching its conclusion in *Comstock v. Collier*, 694 P.2d 1282, the Court of Appeals stated that this court rejected a continuous treatment exception in *Austin v. Litvak.* We agree that no "exception" to the two-year statute of limitation or the three-year statute of repose exists for a continuous course of improper treatment. However, in the case of a continuous course of treatment for a particular condition, we conclude that the three-year statute of repose does not begin running until the final act constituting the treatment.

Under the provisions of section 13–80–105, the two-year statute of limitation begins to run on the date that the person bringing the action discovered or in the exercise of reasonable diligence should have discovered the injury. The three-year statute of repose, however, begins to run on the date of the "act or omission which gave rise" to the action. In cases not covered by the exceptions to the statute of repose, this statute prevents the assertion of stale claims and reduces the so-called "long-tail" of liability created by the discovery rule. *Austin v. Litvak*, 682 P.2d at 46. Under some circumstances, the statute of repose bars an action before discovery of the injury.

When the alleged negligence of a person licensed to practice medicine consists of a continuous course of treatment, the date of any one particular act or omission causing injury may be impossible to determine. Indeed, the negligence in many cases may consist of a series of acts or omissions,

---

**4.** Generally, a plaintiff may not rely on mere allegations of the complaint to establish a genuine issue of material fact to defeat a motion for summary judgment. C.R.C.P. 56(e). However, Collier did not contest the misdiagnosis claim for purposes of the summary judgment motion. Rather, he asserted that the repose provision of the statute of limitation, § 13–80–105(1), barred the plaintiff's claims. Summary judgment was entered in favor of Collier on this basis. In light of our holding in *Austin v. Litvak*, 682 P.2d 41, that the statute of repose does not apply to a negligent misdiagnosis claim, the uncontested misdiagnosis claim of the complaint was sufficient to defeat Collier's motion for summary judgment.

**5.** In view of the fact that *Austin v. Litvak* had not been decided when this complaint was filed, it would be unfair to require this plaintiff to describe the misdiagnosis claim in more detail in the complaint.

each contributing to the injury. In such cases involving a continuous course of treatment, the act or omission which triggers the three-year statute of repose is the end of the course of treatment. *See Smith v. Dewey,* 214 Neb. 605, 335 N.W.2d 530 (1983) (ten-year statute of repose "after the date of rendering or failure to render ... professional service which provides the basis for the cause of action" begins to run at end of course of treatment alleged to be malpractice). Fixing this point to trigger the statute of repose is based on a theory of continuing negligence—the physician has a continuing duty of treatment and care and a duty to rectify any mistakes made during the course of treatment. Failure to rectify the mistakes constitutes continuing negligence. D. Louisell and H. Williams, *Medical Malpractice* § 13.08 (1986).

Courts in other jurisdictions, generally interpreting statutes differing substantially from section 13–80–105, have considered the continuous treatment theory. In most of these jurisdictions, the statutes of limitation run from the date of the act or omission giving rise to the action. The act or omission which triggers the limitation period is deemed by statute or judicial decision to occur at the earlier of (1) the time the injury was or should have been discovered or (2) the end of a period of continuous treatment for a particular condition.[6]

In Colorado, the discovery rule is incorporated into the statute of limitation: the two-year statute runs only from the date the injury was or should have been discovered, not from the date of the act or omission. The statute of repose, enacted by the General Assembly to prevent assertion of stale claims and reduce the "long-tail" of liability occasioned by the discovery rule, begins to run on the date of the act or omission giving rise to the injury. A period of continuous treatment does not toll the two-year statute of limitation; the statute simply does not begin to run until the date of discovery. Therefore, an action may be barred by the statute of limitation even before the statute of repose is triggered if the injury is discovered or should have been discovered but treatment continues. However, regardless of the date of discovery, an action is barred three years after termination of treatment for a particular condition.

This view of the operation of the statute with respect to claims such as that asserted by the plaintiff furthers the purposes of both the statute of limitation and the statute of repose. Because the action must be commenced within three years after termination of the course of negligent treatment

---

**6.** Nearly all courts which have considered the issue hold that statutes of limitation under which actions accrue on the date of the allegedly negligent act or omission run from the end of a period of continuous treatment. *See, e.g., Kern v. St. Joseph Hosp., Inc.,* 102 N.M. 452, 697 P.2d 135 (1985) (three-year statute of limitation deemed to run from date of last radiation treatment); *Shaw v. Clough,* 597 S.W.2d 212 (Mo. App.1980) (statute of limitation began to run at end of period of continued treatment); *Ballenger v. Crowell,* 38 N.C.App. 50, 247 S.E.2d 287 (1978) (cause of action accrues at end of course of continued treatment unless discovered earlier); *Frazor v. Osborne,* 57 Tenn.App. 10, 414 S.W.2d 118 (1966) (statute of limitation began to run at end of course of treatment where sponge left in hip area during operation); *Farley v. Goode,* 219 Va. 969, 252 S.E.2d 594 (1979) (action for failure to diagnose and treat periodontal disease accrued when treatment ceased); *Tamminen v. Aetna Casualty and Sur. Co.,* 109 Wis.2d 536, 327 N.W.2d 55 (1982) (if any portion of continuous course of negligent treatment falls within period of limitation, entire cause of

action is timely brought); *Bixler v. Bowman,* 94 Wash.2d 146, 614 P.2d 1290 (1980) ("alleged wrongful act" triggering statute of limitation deemed to be last date plaintiff consulted with defendant regarding condition, not date plaintiff consulted with another physician); *accord Teller v. Schepens,* 381 Mass. 621, 411 N.E.2d 464 (1980); *Johnson v. Winthrop Lab. Div. of Sterling Drugs,* 291 Minn. 145, 190 N.W.2d 77 (1971); *Peteler v. Robison,* 81 Utah 535, 17 P.2d 244 (1932). These authorities are relevant because the Colorado statute of repose runs from the allegedly negligent act or omission, whereas the statute of limitation runs from the date on which the injury was or should have been discovered. Therefore, although the relevant statutes differ, the authorities support the proposition that the "act or omission" triggering the statute of repose in these circumstances is the end of a continuous course of treatment. *But see Hill v. Fitzgerald,* 304 Md. 689, 501 A.2d 27 (1985) (statute defined in terms of date of injury deemed to run from date negligent act was coupled with harm, not end of course of treatment).

by the physician, "the facts and circumstances surrounding the treatment are still fresh, and the physician can be sure that after three years from severing a relationship with a patient, the patient is barred from bringing a suit for such treatment." *Ballenger v. Crowell,* 38 N.C.App. 50, 247 S.E.2d 287, 294 (1978). Furthermore, adoption of this rule ensures that premature litigation instituted to save the right of the patient in the event substantial malpractice is later discovered will not be encouraged. *Smith v. Dewey,* 214 Neb. 605, 335 N.W.2d 530, 533.

In *Austin v. Litvak,* we stated as follows:

> The amicus curiae has also urged that we construe the words "act or omission" found in section 13–80–105 in the context of misdiagnosis cases to be a continuing act or omission until discovered by the claimant. The amicus curiae candidly admits there is no Colorado case which supports this novel statutory interpretation. We have been unable to locate any authority elsewhere to support such a construction of the statute. Therefore, we reject the argument because there was no continuation of the physician-patient relationship between Dr. Litvak and Mr. Austin after 1963, and decline to consider the issue further in this case. *See Clark v. Gulesian,* 429 F.2d 405 (1st Cir.1970); *Doyle v. Planned Parenthood,* 31 Wash.App. 126, 639 P.2d 240 (1982); and *Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962), which rejected

the continuing tort theory in medical malpractice cases.

*Austin v. Litvak,* 682 P.2d 41, 46 n. 4. Contrary to Collier's assertions, *Austin* does not govern resolution of the issue presented here. In *Austin,* we rejected a theory of continuing negligence in a misdiagnosis case.[7] The plaintiff's condition in *Austin* was negligently misdiagnosed as parasaggital meningioma, a form of brain tumor. The plaintiff underwent treatment which included removing a part of his skull and replacing it with a metal screen. He was advised to forego surgery and received no further treatment. The plaintiff discovered that the diagnosis was erroneous approximately sixteen years later. Under the facts of the case, the court rejected the argument that the misdiagnosis was a "continuing act or omission" until discovered by the plaintiff.

The circumstances presented in this case differ substantially from those in *Austin v. Litvak.* Nelson received continuous treatment for the same condition from 1967 to 1982. Had Nelson discovered her injury more than two years before commencement of the action, the claim would have been barred by the statute of limitation. However, the injury was not discovered until shortly before the filing of the complaint. Because the three-year statute of repose did not begin to run until termination of treatment by Collier, the plaintiff's claim of negligent treatment is not barred by section 13–80–105(1).

---

**7.** Most medical negligence cases specifically rejecting theories of continuous treatment involve a single, allegedly negligent act with no further contact between the physician and patient. *See, e.g., Doyle v. Planned Parenthood,* 31 Wash.App. 126, 639 P.2d 240 (1982) ("alleged wrongful act" triggering statute of limitation was insertion of IUD, not later failure to warn, where there was no continuing treatment); *see also Austin v. Litvak,* 682 P.2d 41, 46 n. 4. The theory of continuing treatment as justification for adoption of the discovery rule has been rejected in cases in which unauthorized foreign objects were left in the body. *E.g., Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962) (cause of action accrued at time of operation, not when object later discovered). The Maine Supreme Court later adopted the discovery rule and over-

ruled *Tantish* in *Myrick v. James,* 444 A.2d 987 (Me.1982).

In *Hecht v. First Nat'l Bank & Trust Co.,* 208 Kan. 84, 490 P.2d 649 (1971), the court rejected the plaintiff's attempt to use the continuous treatment rule to avoid application of a statute of limitation running two years from the date of discovery. The running of the ten-year statute of repose was not an issue in *Hecht.* In *Brubaker v. Cavanaugh,* 542 F.Supp. 944 (D.Kan.1982), aff'd, 741 F.2d 318 (10th Cir.1984), the Kansas statute of repose then in effect was construed to run from the date of the last negligent examination, rejecting a continuous treatment theory only insofar as the plaintiff argued that the defendant had a continuing duty to render treatment even after the defendant's treatment of the plaintiff in fact ceased.

## IV

For the foregoing reasons, we reverse the judgment of the Court of Appeals insofar as it holds that the complaint failed to allege a misdiagnosis claim. That part of the judgment limiting the plaintiff's negligent treatment claim to damages resulting from acts or omissions occurring three years prior to commencement of the action is modified to recognize that the plaintiff is entitled to seek damages for any acts of omissions by Collier during his treatment of her. The case is remanded to the Court of Appeals with directions to return the case to the trial court for further proceedings consistent with this opinion.

VOLLACK, J., specially concurs in part and dissents in part.

ROVIRA, J., joins in the special concurrence and dissent.

VOLLACK, Justice, specially concurring in part and dissenting in part:

I concur in the result reached in Part III of the majority opinion, to the extent that it finds that the three-year statute of repose under section 13–80–105 does not begin running until the final act in the case of a particular ongoing or continuous course of treatment for a particular condition. I write separately, however, to emphasize that the focus of this continuing treatment analysis must be on the particular treatment for the particular condition at issue, and not on the diagnosis of that condition. I dissent from Part II of the majority opinion, which declares that a claim alleging injury caused by a physician's negligent misdiagnosis is exempt from the repose provision of section 13–80–105. At 848.

. I disagree with the majority's use of *Austin v. Litvak*, 682 P.2d 41 (Colo.1984), as authority for the existence of a misdiagnosis exception. *Austin* was a plurality decision in which three justices held that the statutory scheme of section 13–80–105, which specifically exempted from the three-year statute of repose medical malpractice claims arising from knowing concealment and foreign objects, denied the plaintiffs equal protection guarantees by not also

exempting their claims of negligent misdiagnosis. The plurality decision determined that the appropriate remedy for this equal protection violation was to extend the discovery rule provided by the exceptions to the plaintiffs' claim of negligent misdiagnosis. *Id.* at 53. However, in *Austin,* four justices found that section 13–80–105 did not violate constitutional guarantees of equal protection. In her special concurrence, Justice Dubofsky found that section 13–80–105 did not violate constitutional guarantees of equal protection, concurring in the result in the case but relying on article II, section 6, of the Colorado Constitution. *Id.* at 54 (Dubofsky, J., specially concurring).

A careful reading of *Austin* reveals that the principles of law relied on by the plurality and the special concurrence of Justice Dubofsky differ substantially and thus the case should not be used as authority for the determination of other cases either in this court or in inferior courts. *Hertz v. Woodman,* 218 U.S. 205, 213–14, 30 S.Ct. 621, 622–23, 54 L.Ed. 1001 (1910); *Berlin v. E.C. Publications, Inc.,* 329 F.2d 541 (2d Cir.1964). *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16–19, 103 S.Ct. 927, 937–939, 74 L.Ed.2d 765 (1983).

I agree with Justice Rovira's dissent to the plurality opinion's equal protection analysis in *Austin.* There are real differences between the statute of repose and the discovery rule of section 13–80–105 and the General Assembly is in the better position to evaluate what unfair risks require the tolling of the statute of repose. *Austin,* 682 P.2d at 56 (Rovira, J., dissenting). Two justices joined in Justice Rovira's dissent, which correctly pointed out that the issue in *Austin* was not whether negligently misdiagnosed plaintiffs should have access to the discovery rule, because every medical malpractice plaintiff has access to the discovery rule as part of the two-year statute of limitations in section 13–80–105. *See Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1970). Rather, the issue was whether a rational basis existed for the legislature's decision to toll the three-year statute of repose for only two classes of

plaintiffs, i.e., plaintiffs alleging a knowing concealment of an act or omission or the leaving of a foreign object in the body of the patient. *Austin,* 682 P.2d at 55 (Rovira, J., dissenting).

I believe that the plurality opinion in *Austin* does not serve as authority for Part II of the majority's opinion, and I cannot endorse the majority's attempt to bootstrap the *Austin* plurality opinion onto the case before us. I respectfully dissent to Part II.

I write on Part III to clarify what I believe the continuing treatment analysis adopted by the majority encompasses. In the instant case, the plaintiff asserts in her complaint that she developed cancer in the sites on her legs into which she injected the drug Talwin, pursuant to the defendant's instructions. This case is most clearly a negligent treatment case. It is the continuing treatment of prescribing Talwin over a fifteen-year period that is the heart of this case, and it is this treatment to which we direct our attention. The three-year statute of repose did not begin to run until the final act constituting the treatment, i.e., the last prescription of the drug Talwin. The period of time affected by the continuing treatment theory is the period from the first treatment, here the first prescription of Talwin, to the last treatment. The plaintiff cannot go back to the beginning of her relationship with the defendant, but is limited to the specific treatment which is allegedly negligent and the cause of the plaintiff's injury. If the allegedly negligent treatment of a plaintiff ceases and the patient-doctor relationship continues, the statute of repose starts to run when the particular treatment ends, not when the relationship ends. Here, the plaintiff's claim properly encompasses the period of time from 1967, when Talwin was first prescribed, until 1982, when that treatment ended.

I agree with the majority that the court of appeals erred in so far as it held that the plaintiff was limited in her claim to the last three years of the treatment. The entire period of the plaintiff's treatment with Talwin falls within the period of limitation. *Accord Tamminen v. Aetna Casualty &*

*Sur. Co.,* 109 Wis.2d 536, 327 N.W.2d 55 (1982).[1]

Accordingly, I specially concur in part and dissent in part.

I am authorized to state that ROVIRA, J., joins in this special concurrence and dissent.

---

1. *See* cases cited by the majority at 849, note 6.