[No. 25603-3-I. Division One. April 13, 1992.]

JOHN ORWICK, ET AL, *Appellants,* v. WAYNE R. FOX, ET AL, *Respondents.*

72

*Stephen G. Smith,* for appellants.

*Anne M. Bremner* and *Stafford Frey Cooper & Stewart*; *Kenneth O. Eikenberry, Attorney General,* and *Lisa A. Vincler, Assistant,* for respondents.

KENNEDY, J. — John Orwick asks this court to reverse the Superior Court's order of dismissal of his claims against six Seattle police officers for various torts and for deprivation of federally protected rights. The order of dismissal was based on CR 19 and CR 12(b)(6). Orwick also asks this court to reverse the Superior Court's summary judgment of dismissal of his claims against four employees of Harborview Medical Center and the State of Washington for various torts, and, as against the four Harborview employees for deprivation of federally protected rights. We reverse the court's order of dismissal of Orwick's claims against the six Seattle police officers and affirm the summary judgment of dismissal as to the remaining respondents.

Carol Angel asks this court to reverse the Superior Court's order denying her request to amend an admittedly mispleaded claim. The request to amend was made at the time of hearing on motion for summary judgment of dismissal of the mispleaded claim. The amended claim was for outrage against Seattle police officer Shean and the City of Seattle;[1] against various Harborview Medical Center employees; against the State of Washington; against the University of Washington; and against the University of Washington

---

[1]The City of Seattle was no longer a party to this suit by the time of the request to amend.

Board of Regents. We affirm the court's order denying Angel's request for leave to amend.

FACTS

On the evening of November 7, 1985, appellant Orwick was arrested by officers of the Seattle Police Department for obstructing a public officer in violation of former Seattle Municipal Code (SMC) 12A.16.010(A)(3).[2] Orwick alleges that the officers used unnecessary force in effecting the arrest and that a valuable manuscript was taken from him and never returned. Orwick was taken to jail where he alleges he was beaten unconscious by one or more police officers.

Orwick was transported by ambulance to Harborview Medical Center's trauma center. Medical and security personnel were advised that Orwick was on "police hold", that he was violent, and that 4-point restraints were advisable. He had head wounds that were described as "possibly self-inflicted". He had the odor of intoxicants on his breath.

Orwick was held at Harborview from sometime after 10 p.m. on November 7, 1985, to the early morning hours of November 8. Upon being told that he was still a prisoner, Orwick refused medical treatment and demanded to be taken to Swedish Hospital, to be allowed to call his attorney, and to be allowed to call his fiancee, Carol Angel. All of these demands were refused. Orwick claims that he told Officer Shean and various hospital employees that Angel was 5 months pregnant, that it was a problem pregnancy, that she would probably lose the baby and that she was emotionally distraught. Orwick also allegedly told these individuals that Angel expected him home by 10:30 p.m. and that she would be terrified because he had not yet returned home.

Orwick refused all medical treatment at Harborview. He shouted obscenities and spat upon the medical staff people who tried to clean his head wound and take his blood pressure. He allegedly twisted a nurse's hand when she tried to

---

[2]See Seattle v. Orwick, 113 Wn.2d 823, 784 P.2d 161 (1989).

take his blood pressure. Orwick was placed in a "quiet room" in 2-point restraints. When he managed to free one of his hands from the restraints a security guard and several other staff members forcibly placed him into 4-point restraints. Orwick claims he was also gagged. Hospital witnesses say a towel was placed over his mouth to keep him from spitting on them.

Although Orwick was given no medical treatment at Harborview, his blood pressure was taken and blood was drawn for a blood alcohol test. His blood alcohol level was .126 at approximately 10:30 p.m. Hospital witnesses explain that it was medically necessary to determine whether Orwick's belligerence and agitation and his refusal of treatment for his head wounds were because of drunkenness or because of the head injury.

In the early morning hours of November 8, Orwick was released back to the jail where he contacted an attorney and posted a bond. Orwick contends that when he returned home he found Angel semiconscious and bleeding and that he found a fetus in the toilet bowl. Angel initially contended that Orwick's failure to call home caused her to have a miscarriage. Hospital records revealed, however, that Angel had suffered a "missed abortion" (a miscarriage where the dead fetus is not immediately expelled) a month earlier. Angel then admitted she had not had a miscarriage while Orwick was on police hold. She continued to allege that the fetus was discharged on November 8, however, and that the "spontaneous" abortion of the dead fetus was caused by her terror at not hearing from Orwick.

### PROCEEDINGS BELOW

In July of 1986 Orwick and Angel filed suit. Orwick alleged malicious prosecution, assault, violation of 42 U.S.C. § 1983, negligent and intentional destruction of property and official misconduct against the City of Seattle, the police chief and six Seattle police officers. In this same complaint Orwick alleged assault, false imprisonment, outrage, official misconduct and violation of 42 U.S.C. § 1983 against various

individual members of Harborview's medical and security staff. Some of these claims were also raised against the State of Washington, King County, Harborview Medical Center and its Board of Trustees and the University of Washington and its Board of Regents. Angel joined in the same complaint, alleging negligent infliction of emotional distress against various individual and public defendants.

On November 7, 1988, Orwick and Angel voluntarily dismissed their lawsuits against the City of Seattle and its police chief. On the following day, November 8, 1988, Orwick and Angel filed another lawsuit against the City and police chief, making the same complaints as in the July 1986 lawsuit. Appellants explain that the dismissal and refiling became necessary after they became aware of the ruling in *Daggs v. Seattle*, 110 Wn.2d 49, 750 P.2d 626 (1988). They did not dismiss and refile their claims against the individual police officers because the 2-year statute of limitations for intentional torts had by then expired.[3]

In October 1989, the six Seattle police officers and all of the defendants as to the claims against Harborview and its employees and superiors brought motions for dismissal of Orwick's and Angel's claims filed in July 1986. The officers argued that appellants had failed to join necessary parties (City and police chief) and had engaged in impermissible claim splitting by severing the claims against the City and police chief and refiling those claims in the 1988 lawsuit. The Harborview-related defendants (hereinafter referred to as the State defendants) sought summary judgment of dismissal of all claims against them and CR 11 sanctions for Angel's claim. Angel then sought leave to amend her claim from one of negligent infliction of emotional distress to a claim for outrage.

The court granted dismissal of Orwick's claims against the six police officers based on CR 19 and CR 12(b)(6). Sum-

---

[3]The November 1988 lawsuit against the City of Seattle and the police chief is still pending in King County Superior Court. That lawsuit is not a subject of this appeal.

mary judgment of dismissal was also awarded to all of the State defendants as against both Orwick and Angel. The court declined to grant CR 11 sanctions against Angel, and declined to grant Angel leave to amend her claim. This appeal was filed after appellants' motions for reconsideration were denied by the court.[4]

ISSUES

A. As to Orwick's claims against the six police officers:

1. Were the police chief and the City of Seattle necessary and indispensable parties in Orwick's suit against the individual police officers?

2. Was the dismissal of the 1986 lawsuit against the six officers the appropriate remedy for the claim splitting that resulted when the respondeat superior claims against the City and police chief were dismissed and refiled in 1988?

B. As to Orwick's claims against the State defendants:

1. Were the four Harborview employees entitled to summary judgment of dismissal of Orwick's claims for deprivation of federally protected rights under 42 U.S.C. § 1983?

2. Were the four Harborview employees and the State of Washington entitled to summary judgment of dismissal of Orwick's claims for assault, false imprisonment and outrage?

C. As to Angel's claim:

1. Was it error to deny Angel leave to amend her complaint?

---

[4]At various times during the proceedings below appellants voluntarily dismissed their claims against King County, Harborview Medical Center and the Board of Trustees of Harborview Medical Center. Orwick has not appealed the trial court's summary judgment of dismissal of various other defendants. For purposes of this appeal the remaining defendants as to Orwick's claims are the six Seattle police officers (Shean, Fox, Hunt, Nolting, Ash and Beste); four Harborview employees (Engstrom, Cunningham, Le and Stone) and the State of Washington. Angel's amended claim would have named Officer Shean and the City of Seattle; Harborview Medical Center employees Engstrom, Cunningham, Freeman, Stone and Does 1 through 20; the State of Washington; the University of Washington and the University of Washington Board of Regents.

D. Are the State defendants entitled to sanctions against appellants and their attorney for prosecuting a frivolous appeal?

## DISCUSSION

### A. Orwick's Claims Against Police Officers.

1. Were the police chief and the City of Seattle necessary and indispensable parties in Orwick's suit against the individual police officers?

■ Orwick argues that the court erred in ruling that the City and the police chief were indispensable parties under CR 19(b) and dismissing Orwick's claims against the officers with prejudice. Orwick is correct. CR 19 involves a 2-part inquiry. *In re Johns-Manville Corp.*, 99 Wn.2d 193, 197, 660 P.2d 271 (1983). First, the court must determine if the absent person is needed for a just adjudication under CR 19(a), that is, if the absent person is "necessary", and, if so, whether it is feasible to join such person. *Johns-Manville.* This requires a determination of whether that person's absence from the proceedings prevents the court from affording complete relief to existing parties to the action or whether that person's absence would either impair that person's interest or subject any existing party to inconsistent or multiple liability. CR 19(a). Second, if the court determines that the absent person is a "necessary" party under CR 19(a) and cannot be joined, the court must determine if "in equity and [in] good conscience" the action should proceed among the existing parties or the action should be dismissed, the absent person being thus regarded as indispensable. CR 19(b); *Aungst v. Roberts Constr. Co.*, 95 Wn.2d 439, 443, 625 P.2d 167 (1981). In making this determination, the court must consider four factors: (1) to what extent a judgment rendered in the person's absence might be prejudicial to such person or to existing parties; (2) to what extent, by protective provisions in the judgment, the shaping of relief or other measures, the prejudice can be

lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed. CR 19(b); *Aungst*, 95 Wn.2d at 443.

In this case, the court entered no findings as to whether the City and the police chief were necessary parties or indispensable parties and did not order that they be joined, but simply dismissed plaintiffs' action, citing CR 12(b)(6) and CR 19. This alone would appear to be an abuse of discretion. Appellate courts have generally required a clear determination by the ruling court that a party is both necessary and indispensable before allowing dismissal under CR 19(b), and have also required an order that any necessary parties be joined. *See Department of Social & Health Servs. v. Latta*, 92 Wn.2d 812, 818, 601 P.2d 520 (1979) (absent order of joinder and determination of indispensability, court concluded that dismissal of action was based on privilege and not CR 19(b)); *In re Estate of Van Dyke*, 54 Wn. App. 225, 232, 772 P.2d 1049 (1989) (remanding to court for determination of whether legatees were indispensable parties under CR 19(b)); *see also Ferguson v. Thomas*, 430 F.2d 852, 860 (5th Cir. 1970) (remanding to court for order of joinder, or if joinder not feasible, for determination of indispensability).[5]

 Not only did the court below fail to follow the proper procedure under CR 19, but dismissal was not warranted on the merits. An employer and its employees are jointly and severally liable for the negligent acts of the employee in the scope of employment, and one damaged by such acts can sue both the employer and the employee or either separately. *James v. Ellis*, 44 Wn.2d 599, 605, 269 P.2d 573 (1954). Although tortfeasors who are jointly and severally liable may be necessary parties under CR 19(a), they are not indispensable parties under CR 19(b). *Johns-Manville*, 99

[5]In at least one case, however, the court affirmed without discussion the dismissal of a claim under CR 19(b) even though the trial court did not first order that any necessary parties be joined or make a finding of indispensability. *See Lakemoor Comm'ty Club, Inc. v. Swanson*, 24 Wn. App. 10, 17-18, 600 P.2d 1022, *review denied*, 93 Wn.2d 1001 (1979).

Wn.2d at 198; *see also Aungst*, 95 Wn.2d at 444 (CR 19(b) did not require dismissal of action against agent for Indian tribe even though tribe could not be joined as party). Moreover, based on the principle that a plaintiff may sue either the employee or the employer for the employee's tortious conduct within the scope of employment, several courts have held that the employee is a proper but not a necessary party in a respondeat superior action against the employer. *See, e.g., Cobbin v. City & Cy. of Denver*, 735 P.2d 214, 217 (Colo. Ct. App. 1987); *Brosamle v. Mapco Gas Prods., Inc.*, 427 N.W.2d 473, 475 (Iowa 1988). Conversely, an employer should be a proper, although not a necessary, party in an action against an employee. In short, the City and the police chief are not necessary parties, much less indispensable parties, in Orwick's tort action against the officers.

With respect to Orwick's official misconduct and § 1983 claims against the officers, the officers cite no authority for the proposition that the City and the police chief are necessary parties to these claims. Even if the City and the police chief are necessary parties with respect to these claims, they should not be deemed indispensable parties for the additional reason that dismissal of Orwick's tort claims against the officers at this time deprives Orwick of any tort remedy against the officers because of statute of limitation problems. *See Orion Corp. v. State*, 109 Wn.2d 621, 747 P.2d 1062 (1987) (equity and good conscience require that plaintiff be permitted to continue action against County and State without joinder of federal government, a necessary party, where plaintiff could not sue all defendants in one jurisdiction), *cert. denied*, 486 U.S. 1022 (1988).

The officers argue that Orwick had several opportunities to move for joinder of the City and the police chief, to amend his complaint against the officers to add the City and the police chief and to request consolidation of the two actions, but has failed to do so, and that this alone warrants dismissal. Orwick stated in his motion for reconsideration of the ruling court's dismissal that he was willing to consolidate the two actions and suggested that the court "might order that plaintiff effect joinder of the City of Seattle and

[the police chief] within 30 days." The court denied Orwick's motion for reconsideration without discussing the possibility of consolidation. Even if we were to hold that a party waives his right to contest dismissal under CR 19 if he fails to join a person deemed "necessary" by the court, however, such a holding should not be applied in this case because the City and the police chief are proper but not necessary parties.[6]

2. Was the dismissal of the 1986 lawsuit against the six officers the appropriate remedy for the claim splitting that resulted when the respondeat superior claims against the City and police chief were dismissed and refiled in 1988?

The court's dismissal of Orwick's claims against the officers based on impermissible claim splitting is also error. Orwick effectively concedes that to the extent his July 1986 tort claims against the police officers are resolved against him in a trial on the merits, Orwick's November 1988 claims against the City and the police chief may also be barred by res judicata.

■ Whether or not a claim in a later filed suit may be deemed properly barred by res judicata, however, a claim in a *later* filed action cannot be raised as a bar to proceeding in an *earlier* filed action making essentially the same claim or based on the same facts. *See Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983) ("Res judicata occurs when *a prior* judgment has a concurrence of identity in four respects with a subsequent action" (italics ours)); *Gilman v. Gilman*, 41 Wn.2d 319, 323, 249 P.2d 361 (1952) (subsequent suit cannot be pleaded in abatement of prior action for same cause; it is the action first commenced and still pending when second suit is started that must stand). In this case, the claim against the police officers is the *earlier*

---

[6]We also note that the court's order of dismissal was "with prejudice". Dismissal for failure to join an indispensable party, however, should generally be made without prejudice. Once a trial court determines an action must be dismissed for failure to join an indispensable party, the court must dismiss the case without making further rulings. *Lakemoor*, 24 Wn. App. at 18.

claim and the claim against the City and police chief is the *later* claim.

B. Orwick's Claims Against the State Defendants.

1. Were the four Harborview employees entitled to summary judgment of dismissal of Orwick's claims for deprivation of federally protected rights under 42 U.S.C. § 1983?[7]

 Orwick appeals the court's summary dismissal of his claims under 42 U.S.C. § 1983 against the hospital security guard and the other hospital personnel who dealt with Orwick at Harborview.[8] He alleges that these defendants violated his Fifth and Fourteenth Amendment rights by restraining him for more than 5½ hours. As state employees, these defendants are afforded qualified immunity from liability in the performance of their discretionary duties unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). The relevant inquiry is whether a reasonable government official could have believed that the challenged conduct was lawful, in light of clearly established law and information he or she possessed. *Anderson v. Creighton*, 483 U.S. 635, 641, 97 L. Ed. 2d 523, 107 S. Ct. 3034, 3040 (1987). Because qualified immunity entitles a government official to immunity from suit rather than a mere defense to liability, it is essential that "insub-

---

[7]Orwick also challenges the court's ruling striking from the record an unauthenticated partial report of proceedings from Orwick's hearings in the criminal proceedings in Seattle Municipal Court. We need not reach that issue in view of our affirmance of the summary judgment of dismissal as to these State defendants. In so affirming, however, we have treated the striking of the partial report of proceedings as if it were erroneous and we have fully considered the contents of the partial report of proceedings.

[8]The State defendants argue that the trial court properly dismissed Orwick's § 1983 claims against the State, the University of Washington, the Board of Regents, Harborview and its Board of Trustees. Orwick brought § 1983 claims only against the individual Harborview employees and Harborview's Board of Trustees, however, and appeals only the dismissal of his claims against the individual employees.

stantial claims" be resolved as quickly as possible. *Anderson*, 483 U.S. at 646 n.6. When available, entitlement to qualified immunity may be established as a matter of law by the court on a motion to dismiss by summary judgment or by directed verdict. *Thorstad v. Kelly*, 858 F.2d 571, 575 (9th Cir. 1988).

■ The Supreme Court has recognized that prisoners and patients involuntarily confined to state institutions have a constitutional right to freedom from bodily restraint. *Youngberg v. Romeo*, 457 U.S. 307, 316, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1982). The Supreme Court has also recognized that a patient's right to be free from physical restraint must be balanced against the institution's need to protect the staff, the patient and other patients from the violent behavior of the patient. *Youngberg*, at 320. In balancing the patient's liberty interest against the State's duty to protect patients and staff, courts must give deference to the decisions of appropriate professionals. *Youngberg*, at 323. The decision to restrain a patient, if made by a professional, is presumptively valid and liability may be imposed only if the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the professional did not base his or her decision on professional judgment. *Youngberg*, at 323.

■ In its motion for summary judgment, the State defendants submitted the affidavits of Christine Martin, the nurse coordinator of the Harborview Emergency Trauma Center, and Dr. Michael Copass, a professor of neurology at the University of Washington and the medical director of Harborview's emergency trauma center. Each stated that they reviewed the medical records of Orwick's emergency room visit on November 7 and that, in their professional opinion, the staff on duty acted appropriately and in good faith in restraining Orwick under such conditions. Orwick did not submit any evidence, through expert testimony or otherwise, to establish that the decision of Harborview personnel to keep Orwick first in 2-point restraints, and then in 4-point restraints when he became agitated, was not based on sound professional judgment. Because Orwick did not make a

showing sufficient to establish the existence of this element of his case, the court properly granted summary judgment. *See Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989) (where defendant movant presented affidavit of medical doctors stating that the standard of care was not breached and the plaintiff's opposing affidavit was rejected, summary judgment for defendant was proper).

2. Were the four Harborview employees and the State of Washington entitled to summary judgment of dismissal of Orwick's claims for assault, false imprisonment and outrage?

Orwick brought claims for assault against four individual Harborview employees for taking his blood pressure, drawing his blood, restraining him and cleaning his wounds (or attempting to do so) without his consent. Orwick's designation of these actions as assault rather than battery is puzzling. A battery is the intentional infliction of a harmful or offensive bodily contact upon another. *Garratt v. Dailey*, 46 Wn.2d 197, 200-01, 279 P.2d 1091 (1955); Restatement (Second) of Torts § 18 (1965). In contrast, assault is intentionally creating an apprehension of harmful or offensive contact by causing a harmful or offensive contact or an imminent apprehension of such contact. *St. Michelle v. Robinson*, 52 Wn. App. 309, 313, 759 P.2d 467 (1988); Restatement (Second) of Torts § 21 (1965). Orwick is evidently focusing on his apprehension caused by the defendants' allegedly unpermitted contacts rather than the contacts themselves.

In either case, the court properly dismissed Orwick's assault claims. RCW 7.70.030 provides that in any action for damages for injury occurring as a result of health care, the plaintiff must establish that the injury resulted from the failure of the health care provider to follow the accepted standard of care, that the health care provider promised that the injury suffered would not occur or that the injury resulted from health care to which the patient did not con-

sent. The plaintiff has the burden of proving each fact essential to an award by a preponderance of the evidence, unless otherwise expressly provided in RCW 7.70. RCW 7.70.030. By its terms, RCW 7.70 applies to all actions against health care providers, whether based on negligence or intentional tort.

Thus, in order to recover in this case, Orwick would need to establish either that the defendants' conduct did not comport with the accepted standard of care or that he did not consent. RCW 7.70.050(4) addresses the issue of consent in a health care emergency:

> If a recognized health care emergency exists and the patient is not legally competent to give an informed consent and/or a person legally authorized to consent on behalf of the patient is not readily available, his consent to required treatment will be implied.

■ To support their motion for summary judgment, the State defendants submitted the affidavits of Martin and Copass stating that Harborview personnel acted appropriately and in good faith during Orwick's emergency room visit. In the partial verbatim report of proceedings, a registered nurse on duty at the time Orwick was brought to the emergency room also stated that Orwick's blood pressure and blood alcohol were taken and an effort was made to clean his wounds in order to determine the reason for Orwick's aggressive behavior and *whether he was competent* and that this was standard medical procedure under the circumstances. Orwick presented no evidence other than his testimony that he did not consent to treatment to establish that Harborview medical staff did not act appropriately in performing minimal diagnostic measures and restraining him to determine if he was competent to decline treatment and to prevent him from harming himself or others. The court therefore properly granted summary judgment dismissing Orwick's assault claims. *Young*, 112 Wn.2d at 225-26; *cf. Noel v. King Cy.*, 48 Wn. App. 227, 231, 738 P.2d 692 (1987) (plaintiff must generally establish genuine issue of fact by expert medical testimony to withstand properly supported motion for summary judgment).

■ The court also granted summary judgment dismissing Orwick's claims against the various individual State defendants for false imprisonment based on the hospital's use of 4-point restraints. False imprisonment is the intentional confinement of another person unjustified under the circumstances. *Kellogg v. State*, 94 Wn.2d 851, 856, 621 P.2d 133 (1980). Again, Orwick presented no evidence to contradict the testimony of medical experts that use of restraints was justified under the circumstances. Therefore, the court properly granted summary judgment against Orwick on his false imprisonment claim.[9]

■ Orwick also appeals the court's grant of summary judgment in favor of the State defendants on Orwick's claim for outrage. Orwick bases his claim of outrage on his allegations that hospital personnel refused his requests to call Angel unless he accepted medical treatment. There was also evidence that persons brought into Harborview on a police hold are not allowed to make telephone calls in any event, except with police permission, for security reasons. The basic elements of the tort of outrage are: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989). The conduct in question must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Dicomes*, at 630 (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975)). Whether certain conduct is sufficiently outrageous is ordinarily a question for the jury, but it is initially for the court to determine if

---

[9]Orwick's reliance on WAC 275-55-341 and WAC 275-55-263(2)(e), relating to involuntary evaluation and treatment of the mentally ill, to support his claim that his confinement was not justified is without merit. Orwick was not brought to Harborview for mental health treatment. Instead, he was admitted for treatment of his head injuries. By its terms, WAC 275-55 applies only to the operational procedures for the voluntary treatment, involuntary commitment, evaluation and/or treatment of the mentally ill. WAC 275-55-010.

reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Dicomes*. Given that Orwick was in police custody, the hospital's refusal to allow him to make phone calls without police permission or refusal to allow such calls unless he submitted to minimal diagnostic medical procedures as a matter of law does not constitute extreme and outrageous conduct or an intentional or reckless infliction of emotional distress.

■ Finally, Orwick challenges the court's summary dismissal of his respondeat superior claims against the State based on the allegedly tortious actions of its employees. Because the court properly dismissed Orwick's tort claims against the Harborview employees, dismissal of Orwick's respondeat superior claims against the State was also proper.

C. As to Angel's Claim.

1. Was it error to deny Angel leave to amend her complaint?

In response to the State defendants' motion for summary judgment, Angel acknowledged that her claim for negligent infliction of emotional distress was mispleaded and sought leave to amend her complaint to state a claim for outrage. The court denied Angel's motion and dismissed her claim. After an answer is served, a plaintiff may amend its complaint only by leave of court, and leave shall be freely given when justice so requires. CR 15(a). A court's ruling on a motion for leave to amend will not be disturbed on appeal absent a manifest abuse of discretion or a failure to exercise discretion. *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 351, 670 P.2d 240 (1983).

The State defendants argue that the court properly denied Angel leave to amend because 3½ years had elapsed from the filing of the complaint to the bringing of the motion and because the State defendants had already incurred substantial costs in conducting discovery, interviewing witnesses,

obtaining affidavits and preparing their motion for summary judgment as to Angel's original claim. In the absence of prejudice to the nonmoving party, however, delay alone is not sufficient to justify denial. *Caruso*, 100 Wn.2d at 350 (court affirmed allowance of amendment to add defamation claim almost 5½ years after filing of original complaint where no actual prejudice shown). The State defendants' claim of prejudice is questionable in light of their attorney's affidavit accompanying their motion for summary judgment stating that she had spent only 9 hours preparing to defend Angel's claim.

██ The court's denial of leave to amend should not be deemed an abuse of discretion, however, because the State defendants would be entitled to summary judgment even as against Angel's proposed claim of outrage. As stated above, the State defendants' conduct in allegedly requiring Orwick to submit to minimal diagnostic procedures before being permitted to contact Angel or denying telephone access based upon his status as a prisoner as a matter of law does not state a cause of action for outrage. Because Angel's claim for outrage is based on the same facts, it would also not survive summary judgment. The denial of a motion for leave to amend is not an abuse of discretion if the proposed amendment is futile. *Doyle v. Planned Parenthood of Seattle-King Cy., Inc.*, 31 Wn. App. 126, 132, 639 P.2d 240 (1982).

D. Are the State Defendants Entitled to Sanctions Against Orwick, Angel and Their Attorney for a Frivolous Appeal?

Although Orwick's appeal of the dismissal of his claims against the six Seattle police officers has been granted, the remainder of his appeal is without merit. Angel's appeal is entirely without merit. The State defendants with respect to this issue are five individually named employees of Harborview Medical Center, the University of Washington, the Board of Regents of the University of Washington and the

State itself.[10] The State has requested to be relieved of the expense of defending a frivolous appeal, citing RAP 18.7, 18.9, 10.7, the court's inherent power to control the abuse of the appellate process, CR 11 and 42 U.S.C. § 1983. We grant the request pursuant to RAP 18.9(a).

A frivolous action has been defined as one that cannot be supported by any rational argument on the law or facts. *Bill of Rights Legal Found. v. The Evergreen State College*, 44 Wn. App. 690, 696-97, 723 P.2d 483 (1986) (citing *Bennett v. Passic*, 545 F.2d 1260, 1261 (10th Cir. 1976)).

We are mindful that not every attorney who files appeals is an appellate expert and we are concerned that there not be a chilling effect on the right to appeal by too vigorous an application of sanctions. We are also mindful that parties who are unschooled in the law should not be unnecessarily sanctioned for relying upon what may be the erroneous legal advice of their attorneys as to the merits of proceeding with an appeal. These concerns may be the genesis of the generally applied rule in Washington that one meritorious issue saves the whole, when it comes to applying sanctions. *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 730 P.2d 653 (1986) has been cited for that proposition.[11]

 In determining whether an appeal is frivolous this court examines the record as a whole. Any doubts as to whether the appeal is frivolous will be resolved in favor of the appellant. *Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980).

---

[10]Harborview is a public hospital owned by King County and managed and operated by the University of Washington, a state agency, pursuant to a management contract between King County and the University of Washington.

[11]Headnote 8 to *Green River Comm'ty College* states that the raising of one meritorious issue *precludes* the imposition of sanctions under RAP 18.9(a). However, the text of the opinion does not actually say this. Rather, the Supreme Court appeared to be exercising its discretion under RAP 18.9(a) to decline to award sanctions in a case where one meritorious issue was raised. *Green River Comm'ty College*, 107 Wn.2d at 443.

This court has not previously had occasion to consider the award of attorney fees on appeal when the appellant has raised meritorious issues as against one party but only non-meritorious issues as against another party. However, RAP 18.9(a) clearly provides for such an eventuality ("The appellate court . . . may order a party or counsel . . . who uses these rules for the purpose of delay . . . to pay terms or compensatory damages to *any other party* who has been harmed by the delay . . . ."). (Italics ours.) The Ninth Circuit has considered the issue under Fed. R. App. P. 38 and has concluded that:

> Because the policy of Fed.R.App.P. 38 is to deter appeal as a "knee jerk reaction to every unfavorable ruling," it is appropriate to award attorneys fees where the appeal is frivolous as to certain appellees.

(Citation omitted.) *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981).

We find sanctions to be appropriate under RAP 18.9(a), as against both appellants and as against their attorney, in that as a matter of law this appeal raises no debatable issues with respect to the State defendants. Examining the record as a whole, as to Orwick's claims against the State defendants, the dispositive issues on appeal have not turned on the complexities of 42 U.S.C. § 1983 nor on any unusual aspects of the other applicable law. Rather, the decision has been based on well-recognized principles which apply to virtually all summary judgment proceedings. Those principles are or should be well recognized by every practicing attorney. Orwick has failed to submit any evidence whatsoever that the conduct of the State defendants was not based on sound professional judgment and the appropriate standard of care. His claim for outrage is patently frivolous. As to Angel, the denial of her request for leave to amend was clearly within the bounds of the court's discretion because her claim for outrage was also patently frivolous.

■ We grant the State's request for an award of its reasonable attorney fees against Orwick, Angel and their

attorney for this appeal. The State, in order to perfect the award, must timely comply with RAP 18.1. In so doing, the State shall be required to properly allocate its reasonable fees as to Orwick's issues and as to Angel's issues, so that neither appellant shall be charged for the fees incurred as the result of the time necessary to respond to the issues raised by the other appellant. The liability of Orwick and Angel respectively shall be several only. The liability of appellants' attorney for this appeal shall be joint and several, however, with respect to the entire reasonable fee incurred by the State as to the issues raised by both appellants, for it is the attorney who, in the final analysis, must inform his or her client as to the advisability of an appeal and it is the attorney who is charged with the initial determination of whether an appeal raises meritorious, that is, debatable, issues. The State may not, of course, collect more than its total, reasonable fee. As between Orwick, Angel and their attorney we make no rulings with respect to any rights of contribution. Any such issues must be addressed to the trial court in a separate proceeding.

## CONCLUSION

The dismissal of Orwick's claims against the six Seattle police officers is reversed. The remainder of the rulings of the Superior Court are affirmed. This matter is remanded for such further proceedings as shall be consistent with the ruling of this court.

GROSSE, C.J., and FORREST, J., concur.

Reconsideration denied June 9, 1992.

Review denied at 120 Wn.2d 1014 (1992).